## THE PEOPLE *vs.* MALACHI MONEGHAN.

Since the act of 1851, entitled " an act in relation to courts of Sessions,"(*Sess. Laws of* 1851, 825), a court of Sessions can not be held, except in pursuance of a previous order of a county judge, made under the authority of that act, and in conformity therewith, designating the times for the purpose, and published as therein directed: and when an indictment was found at a term not legally appointed and a plea in abatement, setting up such illegality was interposed and overruled by the Court of Sessions on demurrer, the case having been removed into the Superior Court by certiorari the conviction was reversed and the proceedings of the sessions were quashed.

The People. *v.* Moneghan.

Certiorari to the court of sessions of the county of Livingston. On the 23d March 1854, Malachi Moneghan was indicted in the Livingston county sessions for grand larceny and pleaded not guilty. The indictment and proceedings having been continued till the next term of said court, held in May, 1854, the prisoner obtained leave to withdraw his plea of not guilty and pleaded in abatement to the indictment as follows:

*Livingston County Sessions. — Malachi Moneghan* ads. *The People.* — And the said defendant in his own proper person comes and defends the force and injury, when, &c., and says that the said instrument purporting to be a bill of indictment was not found by any grand jury duly empanneled, charged and sworn, to inquire for the people of the state of New York and for the body of the county of Livingston, because he says that no term of the county court of said county for the trial of issues of fact by a jury was held on the third Monday of March, 1854, and that no court of sessions was appointed by any order of the county judge of the county of Livingston, to be held in and for the said county upon the third Monday of March, in the year of our Lord one thousand eight hundred and fifty-four, otherwise than by an order of which the following is a copy, that is to say:

"At a term of the county court of the county of Livingston, held at the court house in Geneseo in said county on the third Monday of January, 1854. Present, Scott Lord, county judge It is ordered that a grand jury shall be required to attend the terms of the said court to be held on the third Mondays of March and November in each year, and that no grand jury shall be required to attend at any term of this court except as aforesaid."

And this he is ready to verify, &c., wherefore, because the said alleged bill of indictment was not found by any grand jury duly empanneled, charged and sworn to inquire for the people of the state of New York and for the body of the county of Livingston, the said defendant prays judgment of the said bill of indictment and that the same be quashed, &c.

And for a further plea in this behalf, by leave of the court first had and obtained, the said defendant says that the said instrument purporting to be a bill of indictment never was presented to any court of competent criminal jurisdiction by any grand jury duly empanneled, charged and sworn to inquire for the people of the state of New York and for the body of the county of Livingston, because he says that no term of the county court of said county, for the trial of issues of fact by a jury, was held on the third Monday of March, 1854, and that no court of sessions was appointed by any order made or published by the county judge of the county of Livingston, to be held in and for the said county on the third Monday of March, one thousand eight hundred and fifty-four, otherwise than by an order of which the following is a copy, that is to say:

At a term of the county court of the county of Livingston, held at the court house in Geneseo, in said county on the third Monday in January, 1854, present, Scott Lord, county judge.

It is ordered that a grand jury shall be required to attend the term of the said court to be held on the third Mondays of March and November in each year, and that no grand jury shall be required to attend at any term of this court except as aforesaid.

And this he is ready to verify. Wherefore because the said alleged bill of indictment was never presented to any court of competent criminal jurisdiction by any grand jury duly empanneled, charged and sworn to inquire for the people of the state of New York and for the body of the county of Livingston, the said defendant prays judgment of the said bill of indictment, and that the same be quashed, &c.

MALACHI MONEGHAN.

To which pleas the counsel for the people interposed the following demurrer:

And the said the people of the state of New York, by James Wood, Jr., district attorney as aforesaid, come and say that the said pleas of the said defendant, and the matters therein contained in the manner and form as the said are above pleaded,

The People *v.* Moneghan.

are not sufficient in law to quash the said bill of indictment, and that the said people are not bound by the law of the land to answer the same. Wherefore for want of a sufficient plea in this behalf, the said the people of the state of New York demand judgment, and that the said defendant may answer further to the said indictment, &c.

The court of sessions overruled the plea and gave judgment in favor of the people; but directed the district attorney to bring the question raised by the pleas and demurrer, before the supreme court by certiorari, and stayed all further proceedings till the decision of the supreme court should have been obtained.

*George F. Danforth,* for the prisoner.

I. The proceedings of the court convened on the 3d Monday of March, were illegal, null and void. The law of 1851, was not complied with, and if, by reason of that noncompliance, it should be held that the terms previously appointed for general sessions were to be held, it may be answered that at no time was a term appointed, of sessions for March, and also, it is insisted that the law of 1851 supersedes the statute under which the terms of general sessions were held.

II. By rule adopted in January, 1853, (see Rules County Court,) the county judge appointed six general terms of the county court to be held on the 3d Monday of January, March, May, July, September and November of each year, and that no jury should be required to attend the terms of March, July and November. By the judiciary act, art. 5, § 42, courts of sessions could be legally held only at the same time at which county courts for the trial of issues of fact by a jury should be held. The law of 1851, chap. 444, authorizes the county judge to designate the terms of the sessions by order, which is to be published, and which also shall designate the terms at which a grand or petit jury shall be in attendance. This statute has never been complied with, unless the order made 3d Monday of January, 1854, be deemed a compliance. But that order is

no compliance with the statute. 1. It *refers only* to the county court. 2. It can not by implication embrace the sessions, (*Bedell* v. *Powell*, 3 *Code Rep.* 61,) for the courts are distinct. a. In organization. b. In jurisdiction. c. And so recognized in the constitution, and in the code sec. 9, code sub. 687. d. The order indirectly refers to the *terms* appointed the year before.

*James Wood, Jr.,* (Dist. Att'y,) for the people.

I. The court of sessions is a creature of the constitution Sub. Division 2 of sec. 14, art. 6 of the constitution of this state provides that "The county judge with two justices of the peace to be designated according to law, may hold courts of sessions with such criminal jurisdiction as the legislature shall prescribe and perform such other duties as may be required by law." The legislature provided by law for the manner in which "justices of the sessions" should be designated. (*Session Laws of* 1847, *chap.* 280; § 40 *as amended, chap.* 470, § 35.) In this case it appears from the record that the court of sessions which was held in the county of Livingston at the time this indictment was found, was held by and "before Scott Lord, Esq., county judge of said county, and Harvey J. Wood and Wm. J. Hamilton, session justices duly assigned and authorized and empowered to inquire," &c., so that the court was properly constituted, that is to say, it was composed or made up of the persons or officers that the constitution authorizes to hold courts of sessions. The legislature has also prescribed the criminal jurisdiction of the courts of sessions. *Session Laws of* 1847, *chap.* 280, § 44, 2 *Rev. Stat.* 382, § 4, which were the same power and jurisdiction possessed and exercised by the courts of general sessions of the peace at the time of the passage of the act quoted. The court therefore had jurisdiction "to inquire" of the crime charged in the indictment. That brings us to the question of the appointment of the terms of the court or the times and places of holding the same, and it is submitted that if the legislature had omitted to

The People v. Moneghan.

make provision for the appointment of the terms of the court or of the times and places of holding the same, the court itself could by rules or otherwise have appointed them. The first provision for the time and place of holding courts of sessions is contained in § 42, *chap.* 280, *Sessions Laws of* 1847: " courts of sessions except in the city and county of New York, shall be held at the time and place at which county courts for the trial of issues of fact by a jury of the same county shall be held, &c. This law has not been altered or repealed, and is supposed to be in force now. In 1851 the legislature passed an act which contains the following provision: § 1. Courts of sessions, except in the city and county of New York, shall be held in the respective counties, at such times as the county judge of the county shall by order designate. And the county judge shall in such order designate at which terms of the sessions a grand or petit jury or both or neither, shall be required to attend; and no grand or petit jury shall be required to be drawn or summoned to attend any term of the court of sessions which shall be designated by the county judge to be held without such jury; such order shall be published in a newspaper printed in such county for four successive weeks previous to the time of holding the first term of said court under such order. (*Session Laws of* 1851, *ch.* 444; 2 *Rev. Stat.* 381; § 1; 4 *edition.*) The court was held pursuant to an order made by the county judge under the authority conferred by that statute. It is submitted that the order is sufficient and a substantial compliance with the statute.

II. The court was legally he d even if there has been no order of the county judge designating the time for holding it as provided in the act last above referred to. It is not necessary for the county judge to make such order, to give the court of sessions jurisdiction. The act in question is not imperative but directory. (*Smith Com.* 782 *to* 789; *see sec.* 679.)

III. The object of the statute which authorizes and directs the county judge to designate by order the time and place of holding the terms of the courts of session is, that all persons interested may have notice. The same rule then should be

applied to this order that we should apply to test the validity and sufficiency of a notice. It is a well settled rule that if a notice which a statute or rule of court directs to be given, is sufficient to apprize the party of what is intended, so that he is not misled thereby, it will be held sufficient. If that rule is to be applied to the order complained of, it must dispose of the case, for no one was or could be misled by it, or read it without understanding that the " county court " named and referred to as " this court," was intended for, and referred to, the court of sessions.

IV. The question raised is one purely technical, and is not entitled to any special favor from this court. It is not pretended that any injury has resulted to the defendant, or that his rights or liberty has in any way been jeoparded. The indictment has been fairly found and properly presented by a grand jury duly drawn, summoned, empanneled and sworn. If the demurrer is sustained, it is in effect deciding that all of the proceedings of the court of sessions, had at the term at which this indictment was found, are illegal and void. It is proper to state that there were found and presented to the court at that term, by the grand jury, 28 indictments, 15 of which were for felonies.

*By the Court,* T. R. STRONG, J. — It is provided by the constitution, (*article* 6, *section* 14,) that " the county judge, with two justices of the peace to be designated according to law, may hold courts of sessions, with such criminal jurisdiction as the legislature shall prescribe, and perform such other duties as may be required by law." The legislature by *article* 5, *section* 42, of the judiciary act, enacted that " courts of sessions, except in the city and county of New York, shall be held at the time and place at which county courts for the trial of issues of fact by a jury of the same county shall be held, and the same number of grand and petit jurors shall be drawn and summoned therefor, and attend, the same as is now required for courts of general sessions of the peace, in the same county." (*Laws of* 1847, 331, 2.) In 1851, the legislature passed an

The People v. Moneghan.

act in these words: " courts of sessions except in the city and county of New York, shall be held in the respective counties at such times as the county judge of the county shall by order designate.   And the county judge shall in such order designate at which terms of the sessions a grand or petit jury or both, or neither shall be required to attend; and no grand jury or petit jury shall be required to be drawn or summoned to attend any term of the courts of sessions which shall be designated by the county judge to be held without such jury; such order shall be published in a newspaper  printed in such county, for four successive weeks previous to the time of holding the first term of said court under such order."   These acts were within the constitutional power of the legislature; and no court of sessions could be  legally held, or  transact any business, before the last named act,  except at the times and places regularly appointed for, and at which should be held, the terms of the county court in the same county for the trial by jury of issues of fact; nor since that act can a court of sessions be held at any other times except in pursuance of a previous order of the county judge, made under the authority of that act, and in conformity therewith, designating such times for the purpose, and published as therein directed.   Whether the first named act remains in force in each county, until an order be made by the worthy judge specifying the times for holding the court of sessions therein, and published according to the subsequent act, it is not necessary now to determine.

The indictment in the present case was filed the 23d of March, 1854, and it is stated in the caption thereof to have been found, " at a court of sessions holden at the court house in the town of Genesco, in and for the county of Livingston, on the third Monday of March," 1854.   It is alleged in the plea of the defendant, that no  term of the county court of said county for the trial of issues of fact by a jury, was held on the third Monday of March, 1854, and that no court of sessions was appointed by any order of the county judge of that county to be held at that time, otherwise than by an order of which a

copy is therein given. This allegation is admitted by the demurrer.

The order is in these words: " At a term of the county court of the county of Livingston, held at the court house in Geneseo, in said county on the third Monday of January, 1854. Present, Scott Lord, county judge. It is ordered that a grand jury shall be required to attend the terms of said court to be held on the third Mondays of March and November in each year, and that no grand jury shall be required to attend at any term of this court except as aforesaid." It is contended by the counsel for the defendant, that here is no valid designation of the times for holding the courts of sessions; and I am of that opinion. No court is named, or alluded to by the language employed, besides the county court; it is the terms specified of that court a grand jury is required to attend; and there is nothing ambiguous in the order. All acquainted with the organization of the judicial department of our state, and the laws relating thereto, can not fail to understand that the learned officer who made the order did not intend by it what it expresses, but designed to appoint two of the terms of the court of sessions; this understanding however can only be obtained by going out of the order, and looking at the facts, that a county court has no power to direct the summoning of a grand jury for that court; that their attendance upon it would be useless; looking also at the aforesaid acts of the legislature; and regarding the whole of this extensive matter in connection with the order, and drawing an inference therefrom. An order which requires this knowledge and process to learn what was intended by it, is not a valid designation of the times for holding a court of sessions under the act of 1851.

If I am right in the views expressed, all the proceedings in March in relation to the case were void; hence there was no valid indictment upon which the defendant could be tried.

The conviction must be set aside, and all proceedings of the sessions quashed.