Fullerton, J.
 

 By the laws of 1813 (2
 
 Laws of
 
 1813, 142, § 4), White Plains and Bedford were fixed as the places where the courts of common pleas should be held in the county of Westchester, and the circuit courts and courts of oyer and terminer were required, by a subsequent statute, to be held at the same places.
 

 Section 17 of the code repeals the statute last referred to, and substitutes another mode of appointment. By section 22 the judges of the supreme court of each district are required to appoint the times and places for holding courts within their respective districts. Section 24 pro
 
 *229
 
 vided, however, that the
 
 places
 
 appointed within the several counties for holding said courts, should "be those designated "by statute for holding county or circuit courts. By the same statute (§ 25) it is made necessary that these appointments thus made should "be transmitted to the secretary' of state, and, when received "by that officer, it "became his duty to cause the same to be published in the State paper, at least once a week for three successive weeks before the holding of any courts' in pursuance thereof.
 

 Under this authority, the justices of the supreme court of the second district, in November, 1865, at a meeting for that purpose, designated and appointed White Plains as the place for holding the circuit courts and courts of oyer and terminer for Westchester county, for the years 1866 and 1867, but omitted so to designate Bedford. It is not so stated in the case, but it is to be presumed that these appointments were duly transmitted to the secretary of state, and published by Mm in pursuance of the foregoing statute.
 

 In pursuance of this appointment, a court of oyer and terminer convened at White Plains in December, 1866, and for some reason not disclosed in the case, was adjourned to the 14th day of January then next following, at the courthouse in Bedford. At such adjourned term the plaintiff in error was tried and convicted of administering poison to his wife, with intent to kill; and at a subsequent term was sentenced to the State prison for twelve years.
 

 Before the trial the prisoner’s counsel objected to proceeding therewith, on the ground that the adjournment from White Plains to Bedford was unauthorized; and this presents the only important question in this case.
 

 The power to fix the times and places of holding courts was committed by statute to
 
 all
 
 the judges, and not to a
 
 single
 
 judge of a judicial district. In virtue of this power, White Plains was the only place appointed for holding the courts of oyer and terminer, for the year 1867, in the county of Westchester. It was not in the power of a single judge, at any time, and certainly not after all the
 
 *230
 
 judges had united in making- the appointments, to appoint any other place for holding courts in that county. By ' statute, whenever three or more persons or officers are authorized or required by law to perform any act, such act may be done, and such power, or authority, or duty, may be exercised or performed by a majority of such persons or officers so intrusted or empowered (3
 
 Rev.
 
 Stat., 5th ed., 869, §29).
 

 I cannot see why this provision does not apply to this case. It was designed to prevent the exercise of a power delegated to a number of persons by less than a majority of that number. This design is frustrated, if a single judge is permitted to adjourn a court to a place purposely omitted to be designated by all the judges, when they assembled and made the appointments as required by law. The policy of the law is to inspire confidence in the administration of justice. It is the right of every citizen to know the times and places for holding the courts where his liberty or property may be put ill jeopardy, and that would be a lax system of legislation, indeed, which would leave them the subjects of sudden and perhaps capricious changes.- Our legislature has not so left them. They have solemnly determined that all the judges of each district shall unite in designating the places of holding courts, and require that the appointments thus made shall be published in the State paper for three weeks before any court shall-be held in pursuance of them.
 

 To. sanction the court at which the prisoner was convicted is to annul entirely all these provisions. I have not failed to consider the argument that Bedford was one of the places which
 
 might
 
 have been designated for holding the courts in Westchester county. But the answer to this proposition is, that it was not designated and published as the statute requires, and for that reason was not a place for holding- a court.
 

 The power of a court to adjourn to another place, as well as
 
 time,
 
 is not necessarily involved in this case; but if even that should be conceded, it would still be necessary to adjourn to a place where it would have originally
 
 *231
 
 been proper to hold a court. When the places for holding the courts were incorporated in the statute itself, it would not have been pretended that a judge could hold a court at any other place, under any circumstances, without legislative authority. During the prevalence of “ war, pestilence, or other public calamity, or the danger thereof,”courts may be held at places different from those appointed by statute (3
 
 Rev. Stat.,
 
 5th ed., § 75, p. 480).
 

 In such cases, however, the change is to be made “in writing, under the hand of the governor,” and recorded in the office of the secretary of state, and published in as many public papers as the governor shall designate (§ 76). This shows that the legislature considered the appointment of the places where courts should be held as a matter of importance, and they did not intend that they should be changed for slight causes, and not at all unless such change was duly published. (See also §§ 15 and 16 of the
 
 Code
 
 respecting adjourments of the court of appeals.)
 

 * I can see no difference between the force of an appoint-2nent directly by statute, and one made by judges to whom the legislature has delegated its power to 2nake it, especially where, after it is made, it is required to be lodged in the archives of the State, and published hi the State paper. Such an appointment ought to be ás immutable as if made by the legislature itself.
 

 Even if the power of determining where the courts should be held had been conferred upon a single judge, the action of the court, in this instance, could not be sustained. The adjournment of the oyer and terminer to Bedford was not,
 
 ipso
 
 facto, an appointment of that place for holding the court, within the meaning of the statute. It still would be necessary to transmit the appointment to the state department, and have the same published according to law. These provisions of the statute cannot all be regarded as merely directory.
 

 In the case of The People
 
 v.
 
 Moneghan (1
 
 Park.
 
 Cr., 570), it was held that courts of sessions could not be held, except in pursuance of a previous order of a county
 
 *232
 
 judge, made under the authority of the Laws of 1851, ch. 444, designating the
 
 times
 
 when such courts should be held, and published as therein directed.
 

 The question arose as follows:
 

 By the act referred to, it was provided that
 
 “
 
 courts of sessions, except in the city and county of New York, shall be held in the respective counties at such
 
 times
 
 as the county judge of the county shall
 
 by order designate
 
 . . . such order shall be published in a newspaper printed in • such county for four successive weeks previous to the time of holding the first term of said court under such order.”
 

 The county judge of Livingston county, under this authority, attempted to appoint the
 
 times
 
 for holding the court of sessions in that county, but erroneously made the order to apply only to the
 
 county
 
 courts.
 

 A court of sessions was held on one of the days thus appointed, at which a person was indicted and convicted of felony. The proceedings were removed into the supreme court, where the indictment was quashed, on the ground that no valid appointment • for holding the court had been made.
 

 The places at which courts are held derive an additional importance from the terms of the statute relating to trials by jury. Chapter 210 of the Laws of 1861 provides, that in addition to the box, by law now provided and kept for drawing jurors, the clerk of every county shall provide another box, in which he shall deposit the names of all persons who have been selected and returned as suitable persons to serve as jurors, and who reside
 
 in the city or town where courts are appointed by law to be held;
 
 and that whenever the regular panel is insufficient, the sheriff shall draw from the box so provided the names of as many persons as shall supply any deficiency. In this case the regular panel was exhausted, and the remaining jurors were drawn from the box provided for by the law just quoted, and consequently
 
 were taken from the town of Bedford.
 
 To this the prisoner’s counsel objected. It follows, of course, that if the court was improperly ad
 
 *233
 
 journed to Bedford, the prisoner was not properly tried "before the jury there impaneled, and has therefore lost the benefit of a substantial statutory right.
 

 The cases cited (8
 
 Cow.,
 
 286 ; 1
 
 Seld.,
 
 22), to show the extent of the power of adjournment by bodies invested with it, are not applicable to this case, for many reasons. These are cases where the qualified electors of a town, at their annual town meeting, after having duly organized,' adjourned to another place to consummate the business before them. This was held to be proper, in the exercise of a power conferred upon them by the statute, to hold their meetings at such places as they should from time to time .appoint. Here is no limitation as to place; and though the electors met at a place appointed the year previous, yet having so met and duly organized, they were,
 
 ex m termini, clothed with their original power of adjournment,
 
 and could then exercise it without rendering their proceedings invalid.
 

 No one can doubt for a moment that the learned judge who adjourned the court to Bedford was prompted by the purest motives; but this cannot enter into the consideration of this court in determining as to the legality of the act.
 

 The judgment appealed from must therefore be reversed, and a new trial ordered.
 

 Judgment reversed.