# Court of Appeals.

*July*, 1889.

## PEOPLE *v.* SULLIVAN.

FAILURE OF COURT TO MEET AT TIME TO WHICH IT IS ADJOURNED.—ACT OF GOD.—JURISDICTION.

The trial of defendant for a felony having been commenced, was adjourned at the end of the first day thereof to the next day. On the adjourned day there was a storm of such severity that neither the judges nor the jury were able to reach the court-house, and the trial did not therefore then proceed. On the ensuing day thereafter, however, the court again met, and the trial proceeded without objection on the part of the defendant. Upon the defendant's conviction, his counsel moved in arrest of judgment upon the ground that there was no legal court held after the first day thereof. There was no claim made that defendant had sustained any injury by reason of the continuance. *Held,* that by its failure to meet on the ad-

journed day the court did not lose jurisdiction, nor did it be-
come dissolved.

The power of a court of record in regard to adjournments is not con-
fined to that derived from section 34 of the Code of Civil Pro-
cedure, which provides that a General, Special or Trial Term of
a court of record "may be adjourned from day to day, or to a
specified day, by an entry in the minutes."

Appeal by the people from a judgment of the General
Term of the Supreme Court in the Third Department, of
July 3, 1888, reversing a judgment entered upon a conviction
of defendant Eugene Sullivan in the Court of Sessions of
Montgomery County, March 14, 1888.

The facts fully appear in the opinion of the Court of
Appeals.

*Chas. H. Nisbet*, district attorney (*H. L. Heuston*, assist-
ant), for the people, appellants.

*E. J. Maxwell*, for defendant, respondent.

The opinion of the General Term of the Supreme
Court was as follows:

LANDON, J.—The Court of Sessions duly and regularly
adjourned on the 12th of March until the 13th.    But on
the thirteenth it did not convene at all.    Section 34 of the
Code of Civil Procedure authorizes an adjournment "from
day to day, or to a specified future day."    An adjournment
from the 12th to the 13th was an adjournment from day to
day.    An adjournment from the twelfth to the fourteenth
would manifestly be an adjournment " to a specified future
day."    Our attention is called to the thirty-fifth section,
but that provides for opening the *term*, and for an adjourn-
ment if the judge authorized to hold the term does not
come to the place where the term is appointed to be held.
These judges had duly opened the term, and duly adjourned
the court to the thirteenth.    They did not convene or sit in
court on the thirteenth, and the court did not act on that

day. Now, when it assumed to act on the fourteenth, what warrant had it for action? It had not been appointed for that day, nor continued or adjourned to it. Might it not as lawfully sit at any unspecified future day? We must declare the law as it is, not make it. The statute has assumed to provide for adjournments, but here is a case for which it has not provided. Freeman on Judgments, § 90, says: "Every term continues until the call of the next succeeding term, unless previously adjourned *sine die.*" But how continues? Under a practice regulated by statute it must continue as the statute provides; if there is no statute, then in accordance with its own practice, and following that practice one term might continue until the time fixed for the next. But Freeman also says (§ 121): "In the absence of any statutory provision to the contrary, the term is lost unless the judge appears at the appointed time, and all subsequent proceedings are void."

The authorities in this State, to which we are cited, are to the effect that in opening, constituting, and adjourning court, statutory directions must be substantially followed, or the court fails.

In People *v.* Bradwell (2 *Cow.* 445), the circuit judge appeared on the first day; the justice for sessions did not appear until two days later. The circuit judge opened the circuit on the first day, but conceiving that he had no power to open the oyer and terminer in the absence of his associates, that court was not opened until their arrival. It was held that the court of oyer and terminer failed to exist.

In People *v.* Clews (4 *Abb. N. C.* 264), it was held that the court of oyer and terminer failed because not duly adjourned. In Northrup *v.* People (37 *N. Y.* 203), a court of oyer and terminer adjourned from White Plains to Bedford. It might have been duly appointed at Bedford in the first instance, but it had been appointed at White Plains. The proceedings at Bedford were held void. These cases are not exactly in point, but they are to the effect that the statutory practice must be presumed. Cases in other States

are to the same effect. Wight *v.* Wallbaum, 39 *Ill.* 554 ;. Moore *v.* Heron, 17 *Neb.* 701 ; Langhorne *v.* Wallen, 76 *Va.* 213.

The motion in arrest of judgment was well taken; it presented the question that the proceedings on the fourteenth were *coram non judice* and void, and such they were. The failure of the defendant to object to proceeding with the trial could not constitute a court. The conviction and sentence must be reversed.

LEARNED, P. J., and INGALLS, J., concur.

Upon appeal to the Court of Appeals the following opinion was delivered :

PECKHAM, J.—The defendant was duly indicted by the Grand Jury of the County of Montgomery for having, on October 7, 1887, willfully discharged a loaded fire-arm at a railway train upon the track of the New York Central and Hudson River Railroad Company, and at a car which was part of, and attached to, such train, and thereby endangered the safety of the passengers in said car. He pleaded not guilty, and the trial of the indictment came on regularly at a Court of Sessions held for the County of Montgomery, at Fonda, on March 12, 1888. A jury was at that time impaneled, and sc7eral witnesses were sworn. At the end of the day the court adjourned until 10 o'clock the next morning, March 13. On the adjourned day no court was held on account, as the record states, of the snow blockade. It was the day of the great "blizzard" of 1888. On the next day the court convened, and the defendant and his counsel were present, and the trial proeeeded without objection until its close, when the jury retired, and on returning into court rendered a verdict of guilty of the crime as charged in the indictment. The district-attorney moved for sentence, and thereupon the defendant's counsel moved that the verdict be set aside, and a new trial granted, and also moved in arrest of judgment, upon the ground that

there was no legal court of sessions held on March 14, 1888 ; that being the day upon which the verdict of the jury was rendered. The ground for such statement rested upon the fact that the court on March 12 having been adjourned to meet again on the morning of the 13th, did not meet on that day, and therefore it was dissolved, and had no right to meet on the day thereafter, and that all proceedings before such court were *coram non judice*, and void for want of jurisdiction. The motions were overuled and the defendant sentenced to imprisonment in the State prison. Upon appeal to the General Term, that court reversed the judgment, and held that the motion in arrest of judgment was well taken for the reasons therein stated, and that the failure of the defendant to object to the proceedings at the trial could not constitute a court, or confer any jurisdiction upon the judges to continue the trial. From the judgment of reversal the people have appealed to this court.

The question in this case is of the most technical nature. No harm is claimed to have come from the action of the court in proceeding with its business on the 14th instead of the 13th of March. It is not claimed that the prisoner's rights were in any way jeopardized, or that he lost the benefit of any evidence which he would otherwise have had. Nothing but the clear and simple allegation of a loss of jurisdiction exists. The term was legally commenced on March 12, and the trial proceeded during that day. At its end, it became necessary to suspend the proceedings in order that all those participating in the trial might obtain requisite rest and refreshment. There was no thought of putting an end to the term. An adjournment was had until the next day. An adjournment of such a nature is simply a suspension of the proceedings then taking place for the purpose of continuing them at a stated time thereafter. At the particular time stated the judges did not appear, because of one of the most extraordinary snow-storms known in this portion of the country in modern times, which rendered it impossible for them to reach

the court-house.    At the earliest opportunity thereafter, which was on the very next following day, they did appear, as did the defendant and his counsel and witnesses, and the trial proceeded without objection from either side. Nothing but the most rigorous rule of law should, under the circumstances, compel a court to admit its loss of jurisdiction, and the consequent failure of all proceedings taken before it.    If from the positive commands of any statute, or the decision of some court which is binding upon us, we are compelled to so decide, nothing more need be said.    We do not think there is such a statute or decision. The term of the court having been regularly opened, its continued existence thereafter would by the common law be regarded as but one day.    All the business done at a term of court was by that law referred to its commencement, unless the law directed certain acts to be done on certain other days.    There is an inherent power in a court to adjourn its proceedings from day to day, as long as it is necessary to finish the business legitimately brought before it, unless by the terms of some statute its existence is sooner brought to a close.    The argument for the defendant, brought to its strict logical result, would prevent the further continuance of a court which did not meet until 10 o'clock of the next day, when it had adjourned until the preceding hour of 9.    It would seem as if there were no time within which a judge might appear subsequent to the hour and minute to which an adjournment had been had, if the argument of the defendant were carried to its extreme length.    The failure of a judge to appear upon the day appointed for the commencement of a term of court is a totally different matter.    The term is appointed to be held under the authority of a statute, and an adjourned term of the court at which cases may be noticed and jurors summoned, as if to a new and regular term, is of the same nature.    In such a case, in the absence of any statute, the failure of any judge to appear upon the appointed day may well be regarded as preventing the convening of a legal

court; and, as no legal court convened and commenced its term on the day appointed by law, there would, of course, be no power, in the absence of a statute, in the court to convene the next day, any more than the next month or the next year. In such case there would be no court to convene; but, the term having been opened and commenced its session according to the law, we are not prepared to hold, under the circumstances of this case, that jurisdiction was lost by the failure of the court to appear on March 13, and that consequently all its acts on the 14th and subsequent days were absolutely void. The court was once legally in existence, and there was no adjournment *sine die,* and no intention to put an end to the term.

Section 34, Code of Civil Precedure, provides that a "general, special or trial term of a court of record may be adjourned from day to day, or to a specified future day, by an entry in the minutes." We do not think that the power of a court in regard to adjournments is limited to that which is derived from that section. It may, of course, be adjourned from day to day, or to a specified future day, but we do not think that a failure to appear on the day to which the court was adjourned, not being an adjourned term, would, under the circumstances of this case, work a dissolution of the court. It is stated that "every term continues until the call of the next succeding term, unless previously adjourned *sine die*" (*Freeman Judgments.* section 90), and until that time a judgment may be modified or stricken out. The case of People *v.* Bradwell, 2 *Cow.* 445, does not control. The necessary judges to constitute a court of oyer and terminer did not appear on the first day of the term, and that court was not opened on that or the succeeding day, but it was opened in form on the next day thereafter. It was held that the court of oyer and terminer failed to exist, by reason of the failure of the judges to attend. That case comes under the principle already stated in regard to the failure to attend upon the first day of the term of court.

In People *v.* Clews, 4 *Abb. N. C.* 256, 264, no judge appeared, and an attempt was made to adjourn the court of oyer and terminer by virtue of a letter written by a justice of the Supreme Court, directed to the sheriff and the clerk of the county where the court was appointed to be held, in which letter he directed the court to be adjourned from January 7 to January 14, 1878, and directed that the order should be entered in the minutes of the court. It was held simply that a justice of the Supreme Court could not adjourn a court appointed to be held on a certain day, by sending a letter ordering such adjournment, and not attending such court himself.

In the case of Northrup *v.* People, 37 *N. Y.* 203, it was held that "where the statute made it the duty of the justices of the Supreme Court of each district to appoint times and places to hold courts of oyer and terminer within their respective districts, and where they had made such appointments, a judge had no authority to adjourn such court to be held at any other place within such district." The court was held at a place provided for by statute, and it is entirely plain that no court would have the right to adjourn such court to some other place than the one so provided.

These cases, we think, do not touch the question. If the court in this case lost jurisdiction, at what particular time did it lose it? It adjourned on the 12th until the 13th of March, at 10 o'clock. If the court had appeared at 12 o'clock noon, would it have been in time? If so, would it have been in time if it convened at 55 minutes past 11 o'clock that night? Or is the hour of 12 at midnight the particular moment of time subsequent to which the court could not convene? Questions of this kind may be debated *ad infinitum*, and much learning may be displayed, and much ingenuity of argument exercised, in claiming that the judge must appear at the appointed day and hour, or he can not appear as judge at all. Is there any real force in assuming that a judge might appear at any time of the day

to which court was adjourned, up to 12 o'clock at night, but could not appear and take his seat in a legal court one minute after 12 o'clock? All matters of this kind must stand upon some reasonable foundation, and we think that, under the facts developed in this case, there was not such total loss of jurisdiction in the judges who appeared on the 14th of March that they could do no judicial act, and continue no trial, even with the consent of the person affected by their proceedings.

We, of course, assent to the proposition, generally true, that consent can not confer jurisdiction of the subject-matter, nor can mere consent make a legal court out of one which but for the consent would be wholly without jurisdiction to proceed. But in such a case as this we think the court was not without jurisdiction. The act of God, in the shape of this unprecedented snow-storm, prevented the entrance to the court-house during the day of the 13th of March; but on the 14th, the very earliest time at which approach to the place at which the court was held could be made, the judges and all the parties in the case, jurors, witnesses, officers, etc., came together and continued the trial of the case, which had been adjourned the preceding Monday. As I have said, there is no pretense of any harm having been done, and the defendant has not claimed that he suffered in any way, in mind, body or estate on account of the continuing of the trial on the 14th. If such had been the fact, and the court had notwithstanding continued the trial, and it had been made to appear that by reason of this continuance some possible prejudice might have inured to the defendant, it may very well be that it would have been ground for setting aside the verdict, and, if refused in the trial court, for an appeal to another court, where the defendant would have had his rights guaranteed to him. We can not think that any rule of law compels us to set aside this verdict, and no suggestion of injustice to the defendant appears in the record, or is claimed to exist by reason of this continuance. We think the judgment of

the General Term should be reversed, and that of the court of sessions of the County of Montgomery affirmed.

All concur.