THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* SIDNEY STERN, PERIODICAL DISTRIBUTORS OF GREATER NEW YORK, INC., HERBERT COHEN, MAX SCHIFFRIN, SOL SCHIFFRIN, ELI SCHIFFRIN and WALTER HALE, Respondents.

Second Department, April 24, 1957.

444

*Edward S. Silver*, District Attorney (*Aaron E. Koota* and *Jerome C. Ditore* of counsel), for appellant.

*Herbert Monte Levy* for respondents.

*Joseph A. Solovei* for *G. I. Distributors, Inc.*, and others, *amici curiæ*.

BELDOCK, J. On May 23, 1956 a Kings County Grand Jury, known as the " Rackets Grand Jury " returned an indictment charging respondents with violating section 1141 of the Penal Law, which prohibits the sale of obscene and pornographic books and writings. The indictment was presented on said date to the County Judge presiding at the June, 1955 Term of Part VI of the County Court, which term, by successive orders of said Judge, had been extended to June 30, 1956.

On motion the indictment has been dismissed by another County Judge on the ground that said Grand Jury lacked jurisdiction to return it. The People appeal.

On this record the principal question to be decided is whether, under the circumstances here, jurisdiction existed on May 23, 1956, in the Grand Jury to present, and in the June, 1955 Term of the County Court to receive, the indictment against the respondents for the crime charged.

The facts are not disputed and may be stated briefly.

The " Rackets Grand Jury " had been impaneled for the June, 1955 Term of Part VI of the County Court of Kings County, held by the Honorable SAMUEL S. LEIBOWITZ, County Judge. It is conceded that ordinarily this term of court and of

its Grand Jury would have expired simultaneously at the end of the month, that is, on June 30, 1955. However, by successive orders the term of both was extended as follows:

(1) By formal order, dated June 30, 1955, made by the same Judge on the District Attorney's petition, the term was extended to December 31, 1955 " to permit said Grand Jury to complete the investigations now pending before that body."

(2) By formal order, dated December 28, 1955, made by the same Judge on the District Attorney's petition, the term was extended to January 20, 1956 for the same stated purpose.

(3) By informal order and proclamation made on January 20, 1956, by the same Judge in open court on his own motion, the term was extended to June 30, 1956 for the same stated purpose. The Grand Jury had functioned continuously without recess since its inception in June, 1955.

As the indictment was returned during the last extension period, it is the last extension order with which we are concerned. Accordingly, reference hereafter will be to such last extension period and to such last extension order.

In its preamble that order recites that the Grand Jury has been engaged in conducting investigations into matters duly presented to it by the District Attorney, that its investigations have not been completed, and " that such investigations [should or need to] be completed." In its decretal part the order directs that both the June, 1955 Term and the Grand Jury empaneled for such term be extended to June 30, 1956 " to permit said Grand Jury to complete the said investigations before that body."

The pending investigations related to various forms of gambling and racketeering; but they did not relate to violation of section 1141 of the Penal Law or to the sale of obscene literature. Thus, the indictment did not arise from any of the pending investigations and had no connection whatsoever with any of the matters involved in such investigations.

Although not submitted as part of the printed record on this appeal, this court may take judicial notice of two official documents on file in the office of the clerk of the County Court of Kings County, copies of which have been obtained from such clerk. (Cf. *Brooklyn Public Lib.* v. *City of New York,* 222 App. Div. 422, 436, affd. 250 N. Y. 495; *Matter of Heermance,* 254 App. Div. 685, affd. 278 N. Y. 601; *Shaw* v. *Shaw,* 155 App. Div. 252.) These documents consist of: (1) the formal order of said court, made by its five County Judges on November 8, 1954, appointing its terms for the year 1955, and (2) its printed rules adopted by said Judges as of January 1, 1955.

Reading the two documents together it appears that for the year 1955 six parts are created, Parts I to VI, each part to be held for 12 monthly consecutive terms. Except for the September Term, each term is to begin on the first Monday of the month and is to terminate at the end of the month (such beginning and termination dates being conceded by appellants as to Part VI). For Parts I to V inclusive, known as the Trial Jury Terms, the same Judge is assigned to the same part for the nine months of the year (other than July, Aug. and Sept.), the assignments being made in the order of seniority. Thus: LEIBOWITZ, J., to Part I; SOBEL, J., to Part II; MARASCO, J., to Part III; JOYCE, J., to Part IV; and BARSHAY, J., to Part V. With respect to Part VI, however, for which the Grand Jury here in question was drawn, the assignments are made strictly on a rotating basis — a different Judge for each monthly term, with the senior Judge (LEIBOWITZ, J.) starting in January and the others following respectively each month in order of seniority.

Part VI is obviously designed as the key, or control, part for the entire court. This part is specifically empowered to organize the Grand Jury and to receive its indictments; it is in charge of the Grand Jury. It assigns the cases for trial to the five trial parts, after drawing such cases by lot out of revolving drums — much in the same manner as jurors are drawn. With certain exceptions, it hears all motions, *coram nobis* applications and miscellaneous matters, and it is the "youth" part of the court.

It is also to be noted that rule V-A of the Rules of Calendar Practice of the County Court, Kings County, specifically provides that : "Whenever [a] Grand Jury is continued by any judge *for a particular purpose* as provided by law, all proceedings in connection with the work of said Grand Jury up to and including the arraignment of any defendant indicted by said Grand Jury shall be had before such judge. Proceedings subsequent to arraignment shall be governed by all other provisions of these rules." (Emphasis supplied.)

In determining the validity of the indictment here in question, counsel and the learned court below have considered primarily, not the jurisdiction of the June, 1955 *Term of the court* during this extended period, but rather the *jurisdiction of its Grand Jury* as though the Grand Jury were an independent entity, separate and apart from the said term of the court for which it had been drawn. Consequently, argument and discussion have been centered upon the issue of whether or not the provisions of the extension order operated to constrict the *powers of the*

*Grand Jury.* If the issue involved could be thus narrowed, the solution would be comparatively simple, since no court by its order can abridge the plenary power granted by the Legislature to every Grand Jury " to inquire into all crimes  *  *  *  and to present them to the court." (Code Crim. Pro., § 245.)

In our view, however, the issue involved and presented by this record is much broader. It encompasses essentially: (a) the jurisdiction of the term of the court to receive the indictment and, (b) derivatively, the jurisdiction of the Grand Jury to return the indictment. This follows from the basic fact that the Grand Jury is an adjunct or arm of the court, that it is drawn for a particular term of the court and is under its supervision and control, and that it cannot exist independently of such term of the court — that is, it cannot exist in a state of detached or suspended animation (Code Crim. Pro., § 225; cf. Judiciary Law, § 675; *Matter of Spector* v. *Allen,* 281 N. Y. 251, 260; *People* v. *Jackson,* 205 App. Div. 202, 204; *Matter of Funston,* 133 Misc. 620).

As an agency and as an integral part of the term of court for which it has been drawn, the Grand Jury's power to act is circumscribed by the jurisdiction possessed by such term of court. A Grand Jury's jurisdiction is necessarily coextensive with, and limited by, the jurisdiction of the term of the court for which it has been empaneled (cf. *People ex rel. Unger* v. *Kennedy,* 207 N. Y. 533, 555; *People* v. *Ruttles,* 172 Misc. 306, 307; 38 C. J. S., Grand Juries, § 34). In other words, the Grand Jury " ' may not inquire into those matters which are not within the jurisdiction of the court to which it is an appendage.' " (Sixteenth Annual Report of N. Y. Judicial Council, 1950, p. 247.)

Hence, in the case at bar, if the court by its extension order has effectively constricted the exercise of its *own* jurisdiction to the crimes arising out of the " investigations now pending ", the result was to impose a corresponding constriction upon the Grand Jury's exercise of its jurisdiction to return indictments. The fundamental question presented, therefore, is whether during the extension period the extension order operated to constrict the exercise by the June, 1955 Term of its original plenary jurisdiction.

In our opinion, the extension order did so operate. By its very provisions it was intended to have such constrictive effect. It expressly states that the court term is extended to permit the Grand Jury to complete the investigations which it has commenced and which are still pending. Such an order clearly cannot be deemed an extension carte blanche. Implicit in it is

the pervading thought that the court term should continue: (a) only for the purpose of receiving the indictments and other incidental matters which may arise from the Grand Jury's pending investigations, and (b) only until there has been a disposition of such indictments and matters. Any doubt as to this conclusion is dispelled by a reference to the prior order appointing the 1955 Terms of the County Court and by a reference to that court's own printed rules.

The obvious purpose of these two documents is to establish monthly terms for Part VI, beginning on the first Monday of each month and expiring at the end of each month or just prior to the beginning of the next succeeding term, to have Grand Juries drawn for each of such terms, to have a different County Judge preside at each of such terms, and to have each succeeding Judge and each succeeding Grand Jury handle new business as it becomes available, except that when a Grand Jury "is continued by any judge for a particular purpose" then, only, are the future proceedings growing out of the Grand Jury's *pending investigation* to be conducted before the same Judge who authorized its continuance for the particular purpose (rule V-A, *supra*). The extension order should be construed so as to make it consistent with the court's own prior order and existing rules.

The extension order should also be construed so as to render it consistent with the statutory and inherent power of a County Judge to extend a term of the County Court. The statute (Judiciary Law, § 190, subd. 3) provides that "Each term may continue as long as the county judge deems necessary." The statute, however, is merely declaratory of the common law. Every Judge possesses the inherent power "to continue the term, at least so long as reasonably necessary to dispose of unfinished business" (*Matter of McDonald* v. *Colden*, 294 N. Y. 172, 178; cf. *People* v. *Sullivan*, 115 N. Y. 185, 189). Consequently, in recognizing the power of a Judge to continue a stated or appointed term beyond its normal expiration date, the emphasis invariably is not upon the source of the power, but upon the obvious need to complete the unfinished business then pending before the court or its Grand Jury (cf. *Matter of McDonald* v. *Colden, supra,* pp. 178–179; *Goodrich* v. *Ross-Ketchum Co.,* 274 App. Div. 157, 159; *People* v. *Sullivan, supra,* p. 188).

Since the County Judge has the inherent and statutory power to extend his term as long as he deems "necessary", it is plain that here, as indicated in his extension order, he thought it was necessary to do so only until he had disposed of the busi-

ness growing out of the then pending Grand Jury investigations. Consequently, he must be deemed to have extended his term for that purpose exclusively.

Any other interpretation would not accord with reality. It surely cannot be said that the County Judge found it "necessary" to extend his term for the purpose of disposing of business wholly foreign to the then pending Grand Jury investigations. Obviously, such necessity could not exist in the light of the fact that, at the time the extension order was made, no one — neither the Judge nor the Grand Jury, nor the District Attorney — appears to have been even remotely aware of the existence of such foreign or unrelated business. In fact, it is conceded that the subject matter of the present indictment is a new matter which arose after the extension order was made.

It must be concluded, therefore, that the extension order, by its terms, was intended to confine the exercise of jurisdiction by the June, 1955 Term, during the extended period, to the indictments and matters arising from the Grand Jury's pending investigations.

In any event, however, and quite apart from any interpretation of the extension order, the court's prior order appointing its term and the court's own established rules, would preclude the June, 1955 Term and its Grand Jury from exercising jurisdiction over new business.

Every County Court is specifically authorized by statute to fix its own terms (Judiciary Law, § 190, subd. 1; Code Crim. Pro., § 45); and every County Court has the inherent power to make orders and rules for the purpose of fixing and regulating its terms and the sittings of its Judges and for the purpose of defining what business shall be conducted at any particular term or part of the court and the manner in which it shall be conducted (cf. *Matter of McDonald* v. *Goldstein,* 191 Misc. 863, affd. 273 App. Div. 649).

Unless dispensation or authority be granted by some statute, every County Judge of Kings County is bound by the court's orders and rules. It is fundamental that if a court consists of three or more members (such as the County Court of Kings County, which consists of five members), then a majority controls, and once a majority has acted no one Judge, in the absence of express statutory authority, is empowered to ignore or supersede the orders or rules made by such majority (General Construction Law, §§ 41, 110; *Northrup* v. *People,* 37 N. Y. 203, 205; cf. *Morris* v. *Cashmore,* 253 App. Div. 657, 661; *Matter of Talbot* v. *Board of Educ. of City of N. Y.,* 171 Misc. 974, 977). For that very reason it has been stated "the general rule

still is that ' strict judicial business ' should be confined to stated [appointed] terms of the courts.'' (*Matter of McDonald* v. *Colden,* 294 N. Y. 172, 176, *supra.*)

There are two existing statutory enactments which do permit a County Judge to continue a term of court under certain circumstances:

(1) Thus, upon the term's expiration date if an *action* be pending before the County Judge, he is authorized to extend the term for the purpose of completing all proceedings incident to that action (Code Crim. Pro., § 432; cf. Civ. Prac. Act, § 436). Here, of course, there was no action pending before the Judge or court, except in the sense that a proceeding pending before the Grand Jury — an arm or agency of the court — may well be assimilated to a pending action before the court itself. But even if we equate the two, nevertheless, under the statutory authority mentioned, an order which extends a term to complete a pending action or proceeding is held to constrict the court's exercise of its plenary jurisdiction to that action or proceeding only, and to preclude it from undertaking new or different business during the extension period (cf. *Bell & Graddy* v. *O'Brien,* 113 S. W. 2d 560, 562 [Tex.]; *Hamilton* v. *Empire Gas & Fuel Co.,* 134 Tex. 377; *Morse* v. *Hoover,* 105 S. W. 2d 682, 684–685 [Tex.]; *Hamilton* v. *Empire Gas & Fuel Co.,* 85 S. W. 2d 280 [Tex.]).

(2) As already noted, every County Judge also has the statutory, as well as the inherent, power to continue a term as long as he deems necessary (Judiciary Law, § 190, subd. 3; *Matter of McDonald* v. *Colden,* 294 N. Y. 172, 178–179, *supra*). For the reasons previously mentioned, however, the necessity here was confined to the business growing out of the pending Grand Jury investigations and to the time required to dispose of such business, and, as stated, none of the pending investigations had any connection with the crime of selling obscene or pornographic books or writings. The commission of such crime was distinctly new business which arose subsequent to the time when the extension order was made. Such new business could and should have been presented at the succeeding appointed terms which were available for that very purpose.

Hence, as to such *new business,* the theory of necessity, whether based on statutory or on inherent power, cannot be invoked to justify the extension of the June, 1955 Term or the exercise of its plenary jurisdiction during the extension period. Where, as here, succeeding terms with new Grand Juries have been appointed and are available for new business, the theory of necessity must confine the exercise of jurisdiction, during the

extended period of a prior term, to the completion of unfinished business pending before that term or its Grand Jury at the time the extension order is made.

Accordingly, under the circumstances here, it follows that the County Judge was without power to thus extend his term so as to enable him to exercise jurisdiction over new business. Except as permitted by statute or rule with respect to pending unfinished business, he is bound to adhere to the established terms and rules of his court. He cannot supersede the unrevoked prior order of his court fixing its terms for 1955, nor may he ignore the court's established rules of procedure. If, for any reason, an additional term of the County Court with a Grand Jury is necessary for the consideration of new business, the majority of the Judges of that court are empowered to appoint such term or to change the existing terms (Judiciary Law, § 190, subd. 4; Code Crim. Pro., § 45; cf. *Northrup* v. *People,* 37 N. Y. 203, 205, *supra*).

Of course, as already observed, during the extended period the practical consequence of the court's self-imposed limitation upon the exercise of its own jurisdiction, was to contract correspondingly the Grand Jury's exercise of its jurisdiction. But such an indirect or resulting contraction of the Grand Jury's power was, under the circumstances, not only unavoidable — it was also a practical necessity. It becomes such a necessity especially in the metropolitan area where, despite the extension of any current term of court and its Grand Jury, another term and another Grand Jury come into being immediately upon the original expiration date of the current term and its Grand Jury. The new term and its new Grand Jury follow upon the heels of the old without regard to their extension. The situation may be different, of course, in rural areas where there is only one County Judge who may have appointed three or four monthly terms of court for the entire year.

It follows that, while every current term of court and its Grand Jury, during the extended period, has the right to complete the pending matters, such right does not necessarily give either the court or the Grand Jury the power to consider new business. Neither a term of court nor its Grand Jury should be permitted to perpetuate itself ad infinitum for the consideration of new business, when such perpetuation is plainly unnecessary.

Here, it was plainly unnecessary because a new term of court with a new Grand Jury were available to act upon all new business. To give the old term and the old Grand Jury concurrent jurisdiction as to new business served neither a necessary nor a useful purpose. On the contrary, it produced these results:

(1) with the aid of the District Attorney, it pre-empted for the old term and for one specific Judge and one specific Grand Jury the future or new business of the entire court during the extended period;

(2) it set at naught the court's original order fixing consecutive new terms of court with new Grand Juries;

(3) it nullified the rules established by the court itself for the proper conduct of its business, and

(4) it disrupted the orderly administration of justice.

In other words, such a continuance of a term of court and its Grand Jury would not be as long as " necessary " but as long as suits the whim and the caprice of each individual Judge and District Attorney. Every court should strive to avoid a result which may impair confidence in the administration of justice (cf. *Northrup* v. *People,* 37 N. Y. 203, 206, *supra*). In a court consisting of five Judges of coequal power and jurisdiction, such as the County Court of Kings County (Judiciary Law, § 189, subd. 1), no single Judge, through the medium of extending his current term, should arrogate to himself the future business of a court in disregard of the court's prior orders fixing its terms and rules.

If it be deemed wise (a) to change the common law and the present statutes which make the Grand Jury an integral part of the term of the court for which it was drawn, and (b) to invest every Grand Jury with an independent or " floating " existence and jurisdiction, then it is for the Legislature to adopt appropriate legislation to effectuate such reform. It is interesting to note that as to Federal Grand Juries the Federal Government has seen fit to adopt legislation directed toward achieving such reform in part (cf. *United States* v. *Johnson,* 319 U. S. 503).

It is also interesting to note that in 1950, when the Judicial Council and the Legislature of this State had the opportunity to follow the lead taken by the Federal Government and to establish " floating " Grand Juries, they did not see fit to do so. At that time the council and the Legislature were confronted with the problem of finding a method to prevent or materially shorten an arrested person's time of incarceration when the arrest takes place between Grand Jury sessions, that is, when the arrest occurs during the period when no Grand Jury is in session — a situation frequently occurring in the rural areas of this State. Instead of adopting the Federal reform, however, the council recommended and the Legislature adopted other changes (Sixteenth Annual Report of N. Y. Judicial Council, 1950, pp. 245–251; L. 1950, ch. 798, adding the present renum. Code Crim. Pro., § 244).

These changes, as reflected in the new section (Code Crim. Pro., § 244), in effect guarantee that a term of court with a Grand Jury shall always be available and remain on call until the opening of the next term of court with a Grand Jury. This result is accomplished through the simple expedient of declaring that upon the completion of the business before it every term of court for which a Grand Jury has been impaneled and sworn shall be deemed adjourned to the opening of the next succeeding term for which a Grand Jury has been designated, and that the first Grand Jury shall be recessed but shall remain subject to being reconvened upon order of the court '' to inquire into *a* crime '', provided '' that no other grand jury competent to hear the charge is in session in the county.'' The section then directs that on the opening day of the next term of court for which a Grand Jury has been designated the old Grand Jury is to be finally discharged, unless in the interim it had been reconvened by order of the court '' and on such day has uncompleted business pending before it '', in which event the old Grand Jury '' shall be finally discharged upon the completion of *such* business.'' (Emphasis supplied.)

It is most significant, as will be noted from the council's study and from the new section itself, that all the changes made proceed on the theory: (1) that each Grand Jury is absolutely dependent upon the jurisdiction and the continuance of the term of court for which it has been drawn, (2) that each new or current Grand Jury is invested with the prerogative of undertaking its own investigation as to matters *not pending* before another Grand Jury, (3) that until a new term of court and new Grand Jury are empowered to act, the old term and the old Grand Jury should stand by, subject to the court's power to reconvene the old Grand Jury '' to inquire into a crime '', (4) that as soon as the new term commences and the new Grand Jury takes office, the old term and the old Grand Jury become *functi officio* except as to the matter previously assigned to the old Grand Jury, provided that such matter be unfinished and pending, and (5) that the old term of court and the old Grand Jury are not entitled to trespass upon the prerogatives of the new term of court and the new Grand Jury with respect to any new business.

The rationale underlying the enactment of this new section (Code Crim. Pro., § 244) is wholly consistent with the conclusions here reached.

The order dismissing the indictment should be affirmed (1) on the ground that, properly construed, the extension order confines the exercise of jurisdiction by the June, 1955 Term and

its Grand Jury, during the extended period, to the completion of unfinished pending business, and (2) on the further ground that, if the extension order be construed to permit the exercise of jurisdiction as to new business, it is then invalid because it violates the prior order fixing the terms of the court and because it violates the existing rules of the court. On both grounds or on either ground, therefore, it must be concluded that as to new business, the June, 1955 Term, during its extended period, was *functus officio*; it was no longer a duly constituted court. It could no longer exercise its jurisdiction to receive the Grand Jury's indictment for a violation of section 1141 of the Penal Law. Hence, the indictment found must either be treated as a nullity or it must be dismissed (cf. *Northrup* v. *People,* 37 N. Y. 203, 206, *supra*).

The order should be affirmed.

UGHETTA, J. (concurring). The provisions of the various orders extending the term of the court and the language employed in the applications for such orders evince an intent to limit the jurisdiction of the term and its Grand Jury to the completion of investigations then pending. A County Judge has the power to continue any term of the court as long as he deems necessary (Judiciary Law, § 190, subd. 3). In connection with the exercise of this power, the courts have emphasized the necessity of completing unfinished business (cf. *Matter of McDonald* v. *Colden,* 294 N. Y. 172, 178–179; *Goodrich* v. *Ross-Ketchum Co.,* 274 App. Div. 157, 159; *People* v. *Sullivan,* 115 N. Y. 185, 188). Here, no evidence was presented to the Grand Jury during the first month of the term (June, 1955) concerning any violation of section 1141 of the Penal Law, under which section the indictment presently under attack was returned, nor was there any evidence submitted or any investigation conducted during that month on any subject dealing with obscene or pornographic books or writings. None of the persons named as defendants in the indictment was under investigation in June, 1955 for any crime. Under these circumstances I apprehend that the Grand Jury did not have authority to inquire into the crime allegedly committed on April 5, 1956.

NOLAN, P. J. (dissenting). There is but one question to be determined on this appeal, and that is whether a Grand Jury impaneled for the June, 1955 Term of the County Court, Kings County, had jurisdiction to inquire into the crimes alleged to have been committed by respondents, and to find an indictment against them. The facts are not in dispute. Concededly, the Grand Jury was impaneled for the June, 1955 Term of the

County Court. Two Grand Juries were impaneled for that term, and the Grand Jury in question, designated as the additional Grand Jury (see Code Crim. Pro., § 226), undertook an investigation into various alleged criminal activities in the waterfront area of the county. Of course, no one contends that its powers or duties were originally limited or restricted to the conduct of that investigation and it is not questioned that it had the power to inquire into all criminal activities in Kings County during the normal duration of the June, 1955 Term. That term, however, was extended from time to time until June 30, 1956 to permit the Grand Jury to complete the investigations pending before it. It is not disputed that since its inception and until after the indictment was found against respondents the Grand Jury functioned continuously, and was never in recess. Neither can it be questioned that in May, 1956, when the indictment against respondents was presented, this Grand Jury was a duly constituted body, *de jure,* in every sense. Such being the case, I am unable to agree that its powers were in any way restricted, or that it suffered any loss of jurisdiction because of the fact that during the month of June, 1955 no evidence was presented before it concerning any violation of section 1141 of the Penal Law, or because it had commenced, during that month no investigation of such crimes or of the activities of any of the respondents. There can be no question as to the power of the County Court to extend its June, 1955 Term as long as the County Judge deemed necessary (Judiciary Law, §§ 6, 190; *Matter of McDonald* v. *Colden,* 267 App. Div. 881, 882), and in the absence of a valid restriction on its powers, the Grand Jury during such extended term not only had the power, but also had the duty, to act on information brought before it that crime had been committed which was triable in Kings County (Code Crim. Pro., §§ 245, 252). There is no statute of this State which restricts the powers of a Grand Jury, sitting during an extended term, to the completion of investigations undertaken during the first month of its service, nor were such powers so restricted in the instant case by the orders of the County Court extending its June, 1955 Term to permit the Grand Jury to complete pending investigations. Although the Grand Jury is an arm of the court (*Matter of Spector* v. *Allen,* 281 N. Y. 251) over which the court possesses broad supervisory powers (*People* v. *Besser,* 207 Misc. 692, 695), it is in some aspects an independent body free from judicial restraint (N. Y. Const., art. I, § 6; Code Crim. Pro., §§ 223, 245, 252, 253; *People* v. *Glen,* 173 N. Y. 395, 401; *Morgan* v. *Null,* 117 F. Supp. 11). The grand jurors may, of their own

motion, make full investigation to see whether a crime has been committed. They may investigate on their own knowledge, and may originate charges against those believed to have violated the criminal laws. (*People ex rel. Livingston* v. *Wyatt,* 186 N. Y. 383.) They may seek the advice of the court, but they are perfectly free, and it is their right, to investigate fully and without hindrance any criminal charge which may be presented to them. (*Matter of Mullen* [*Block*], 176 Misc. 442; *People* v. *Molineux,* 26 Misc. 589.) The term of service of this Grand Jury could have been terminated by the court at the conclusion of the month during which it was impaneled or thereafter, prior to the finding of the indictment against respondents. Having elected to continue the June, 1955 Term of the court, and the term of service of its Grand Jury, however, the County Judge could not, as long as he did not finally adjourn the June Term or discharge the Grand Jury, restrain it from exercising the power granted to it or performing the duties enjoined on it by statutory law. (Cf. *United States* v. *Thompson,* 251 U. S. 407; *Hale* v. *Henkel,* 201 U. S. 43, 61–63; *State of Alabama* v. *Knighton,* 21 Ala. App. 330; *People ex rel. Ferrill* v. *Graydon,* 333 Ill., 429, 432–435.)

The record before us does not disclose that the County Judge attempted to assume such power. The successive orders extending the service of the Grand Jury did not purport to curtail its authority or jurisdiction. They merely established the length or duration of its term of service, and did not provide that during the extended term it must confine its activities to unfinished business, and could not act upon evidence of crime not the subject of its previous investigations. Nowhere is it disclosed by the record that the Grand Jury had completed the investigations pending before it, when the indictment against respondents was found, or that consideration of the evidence presented against respondents impeded or in any way prolonged such investigations. Such being the case, no reason appears why the Grand Jury could not properly consider such evidence, and return the indictment which is the subject of this appeal.

The rules of the County Court of Kings County do not require, nor do they in my opinion justify, a contrary conclusion. The provisions of those rules which require that all proceedings in connection with the work of a Grand Jury, continued for a particular purpose, be had before the Judge who orders that the Grand Jury be continued, even when read in the light of the order of the court appointing the terms thereof, for 1955, do not purport to prohibit that Judge or the court from acting on any valid indictment presented by the Grand Jury during

an extended term. Such rules are desirable and necessary for the government and regulation of the procedure of the court, but they were not intended to divest the court of its constitutional and statutory jurisdiction (N. Y. Const., art. VI, §11) or to restrict the powers of Grand Juries in any manner inconsistent with statutory law. No rule of the County Court could have that effect. The power of the County Judges to make such rules is limited to rules which are not inconsistent with pertinent constitutional provisions or statutes. The County Court is vested with the jurisdiction provided and the Judges are required to perform such duties as may be prescribed by law (N. Y. Const., art. VI, § 11). The powers and duties of the Grand Jury in the premises are provided by law, as are those of the court to receive and act on a valid indictment. The court and the Grand Jury had ample jurisdiction, and the indictment is valid and regular on its face. The order appealed from should be reversed and the motion should be denied.

KLEINFELD, J., concurs with BELDOCK, J.; UGHETTA, J., concurs in separate opinion; NOLAN, P. J., dissents and votes to reverse the order and to deny the motion, in opinion, in which WENZEL, J., concurs.

Order affirmed.