# Court of Appeals.

June 7, 1898.

## PEOPLE v. JUSTUS KNATT.

1. CRIMINAL LAW—SECTION 654.

   Section 654 of Penal Code was intended to cover cases that had not been provided for by any other law.

2. INDICTMENT—MISDEMEANOR.

   Indictment; which charges defendant with willfully and maliciously mixing poison with salt and scattering the same in a pasture where the cattle of another were kept, with the intent that the poison so mixed with salt should be taken by the cattle, and that it was so taken and as a result three cows and a bull were destroyed, states a misdemeanor under section 660 Penal Code.

3. SUPREME COURT—JURISDICTION.

   Supreme court has no authority to inquire by indictment of a case which involves one of the minor crimes, the exclusive jurisdiction of which is conferred upon a Court of Special Sessions by section 56 of the Criminal Code, except where the certificate provided by section 57 is obtained.

4. SAME—OBJECTION.

   Such question is sufficiently raised by objection to jurisdiction at the commencement of the trial, and by motion in arrest of judgment, but such objection can be raised by demurrer.

APPEAL from a judgment of the appellate division of the supreme court in the fourth judicial department, affirming a judgment of the Monroe county court of sessions, entered upon a verdict convicting the defendant of the crime of willfully and maliciously destroying personal property, and also affirming an order denying a motion for a new trial, and an order overruling defendant's demurrer to the indictment.

W. H. Sullivan, for appellant.

S. J. Warren, for respondent.

O'BRIEN, J.—The defendant was indicted and convicted under section 654 of the Penal Code for the crime of willfully and maliciously destroying personal property. The specific act charged in the indictment is, that the defendant willfully

and maliciously mixed poison with salt, and scattered the same in a pasture where the cattle of another was kept, with the intent that the poison so mixed with salt should be taken by the cattle; that it was so'taken, and as a result three cows and a bull were destroyed. The indictment was found in the court of oyer and terminer on the 27th of January, 1893, and sent to the court of sessions, where a trial and conviction were had. The defendant demurred to the indictment on the ground, among others, that the court in which the indictment was found had no jurisdiction of the case, since the offense was a misdemeanor within the exclusive jurisdiction of the court of special sessions, unless the certificate provided by section 57 of the Code of Criminal Procedure had been made in the case, and it is conceded that it was not. The demurrer was overruled and the defendant put upon trial and convicted. He then appealed to the Appellate Division from the judgment of conviction and from the order overruling the demurrer, where both were affirmed, and the defendant now appeals to this court from the judgment of affirmance.

The defendant, after the verdict, moved for a new trial and in arrest of judgment, on the ground that the court of sessions had no jurisdiction, and this motion was denied. The question with respect to the jurisdiction of the court was raised by the demurrer and is now before us by the appeal from the order overruling it.

Section 654 of the Penal Code declares that the willful and unlawful destruction of the real or personal property of another is a felony, but the section by its own terms is limited to cases *" where the punishment is not specially prescribed by statute."* A statute so sweeping and general as this is could by a liberal construction be extended to cases that were not within the purpose of the legislature. Almost every crime against property involves, in some sense, its destruction or injury. The crime of arson for instance involves nearly always the willful and unlawful destruction of the property of another, but it cannot be supposed for a moment that such an offense is included within the scope of the section. That provision of the Code was manifestly intended to cover cases that had not been provided

for by any other law. Its purpose is expressed in clear language, and, therefore, if we can find any other statute that provides for the punishment of the offense of poisoning cattle, the conclusion that it does not fall within this section is irresistible.

Section 660 of the Penal Code enacts that "a person who unjustifiably administers any poisonous or noxious drug or substance to an animal, or unjustifiably exposes any such drug or substance with intent that the same shall be taken by an animal, whether such animal be the property of himself or another, is guilty of a misdemeanor." By section 15 of the same Code misdemeanors are punishable by imprisonment in a penitentiary or county jail for not more than one year, or by a fine of not more than five hundred dollars, or by both. Thus it appears that the specific act for which the defendant was indicted and convicted is declared to be a misdemeanor and punishable as such. Even if there was doubt with respect to the question as to which of these two sections applies to the wrongful act with which the defendant was charged, we would, I think, according to all the principles and analogies of the criminal law, be required to hold that it was a misdemeanor rather than a felony. Courts are not justified in giving a strained or extreme construction to criminal statutes in order to bring some particular act within their scope, when it is plain that the same act is covered by another statute defining offenses of an inferior grade. Hence, we must conclude that the offense charged in this indictment was not a felony, but a misdemeanor.

By section 56 of the Code of Criminal Procedure the special sessions, except in the two cities named, have in the first instance exclusive jurisdiction to hear and determine misdemeanors committed within their respective counties as there specified and enumerated, and in this specification are included crimes against the provisions of existing laws for the prevention of wanton or malicious mischief and cruelty to animals. It is provided by section 57 of the same Code that, upon filing with the magistrate before whom is pending a charge for any of the crimes specified in the last section, a certificate of the county judge of the county or of any justice of the supreme court that it is reasonable that such charge be prosecuted by indict-

ment, and fixing the sum in which the defendant shall give bail to appear before the grand jury, and upon the defendant giving this bail, the proceedings before the justice shall be stayed, and he shall, within five days thereafter, make a return to the district attorney of the county of all proceedings had before him of the charge, together with such certificate, and the undertaking given by the defendant thereon, and the district attorney shall then present such charge to the grand jury. No certificate under this section was procured by the district attorney in this case, and, hence, the question arises whether the court of oyer and terminer had jurisdiction to find the indictment, and whether the county court of sessions had jurisdiction to try the defendant. The indictment must show upon its face the facts necessary to confer jurisdiction upon the court in which it is found. The jurisdiction of the court of sessions where the trial was had depended up the jurisdiction of the oyer and terminer where the indictment was found. Since, in our opinion, the offense with which the defendant is charged was a misdemeanor triable exclusively in the court of special sessions under the provisions of section 56, and since no certificate was procured under section 57, the indictment and trial were without jurisdiction. It follows that the defendant's demurrer to the indictment was well taken and should have been sustained.

The district attorney joined issue and went to argument on the demurrer. He did not suggest and does not now suggest any doubt that the question of jurisdiction is raised by the demurrer. There is no question of that kind raised in the case, but a doubt has been suggested by some members of the court as to whether the question is properly raised by demurrer. I think it is quite clear that it is. It was always the law that a general demurrer to an indictment brought the whole record before the court and the inquiry was then open whether the court in which the indictment was found had jurisdiction. 1 Bishop Crim. Pro. §§ 741, 775; 1 Arch. Crim. Pro. (8th ed.) 355. In reason and in the nature of things that must be so, since there can be no indictment at all in any legal sense unless it appears that the grand jury had jurisdiction. Without jurisdiction they have no power to investigate the charge or present

the accused for trial, and a presentment made under such circumstances has no more effect in law than if made by the jurors in their capacity as private citizens. The accused cannot be required to plead to it, and no witness at such an inquiry could be held for perjury, however falsely he may have sworn. So, also, upon a general demurrer that no crime is stated, the same inquiry must always arise, since it is legally impossible for a grand jury to charge any crime unless there is jurisdiction. Therefore, in every inquiry, whether the paper before the court is an indictment at all, in the legal sense, or whether it charges a crime which the accused is required to answer, there must necessarily be involved the question of the jurisdiction of the grand jury. The scope and effect of a general demurrer at common law has not been changed by the Code, unless it be to enlarge it. That statute greatly simplified the forms of pleadings in criminal cases, but an indictment or other pleading, which was good at common law, is good still. It may, indeed, be in a much more simple form, but it is not objectionable if it comes up to the standard of accuracy prescribed by the common law. Kennedy v. People, 39 N. Y. 245; Fitzgerald v. People, 37 id. 413. The court in which this indictment was found was not a court of general criminal jurisdiction. It had jurisdiction only in cases prosecuted by indictment. Code Crim. Pro. § 22. In all cases where courts of special sessions have exclusive jurisdiction, the power of the grand jury to inquire depends wholly on a special fact, and that was the existence of the certificate described in section 57. Until that certificate is made and filed the jurisdiction of the grand jury did not attach, the charge being a misdemeanor of which the court of special sessions had exclusive jurisdiction. It was necessary that this special fact upon which the jurisdiction depended should be alleged on the indictment before the defendant could be required to answer or plead, and hence the question was properly raised by demurrer.

Moreover, it is quite clear that if the question of jurisdiction was not raised by the demurrer, it has not been raised at all. The defendant at the opening of the trial moved to dismiss the indictment for the reason that the court had no jurisdiction and

the motion was denied. There were no facts then before the court, except the allegations of the indictment, and if the indictment was good as against the demurrer, it must certainly have been good as against the motion, unless there is some mysterious force or virtue in a motion that cannot be attributed to a demurrer. To say that the question was not presented by the demurrer, raising as it did an issue of law which went to the very bottom of the case, while it was raised by a summary motion without any additional facts, is very much like asserting that a part is greater than the whole. If, as has been suggested, no statute can be found authorizing a demurrer in such a case, it is equally true that none can be found authorizing a motion. But the Code does authorize a demurrer on the ground that no crime is charged and this is the general demurrer of the common law ; and it also authorizes a demurrer on the ground that local jurisdiction was not acquired, Code Crim. Pro. § 323, and, as we have seen, it was always the law that such a demurrer brought before the court all questions of jurisdiction.

The defendant made another motion after conviction in arrest of judgment which was denied. It was made on the ground, among others, that the court had no jurisdiction. But no proof was made in the case that the certificate upon which jurisdiction depended had *not* been filed. The court, therefore, had no facts before it on this motion that were not before it on the demurrer. If the jurisdiction of the grand jury was to be presumed on the argument of the demurrer, then that presumption remains in the case until removed by proof that the certificate was not filed, and since no such proof was given, the presumption must be in the case against the defendant still. Moreover, the Code provides that a motion in arrest of judgment must be based on grounds of demurrer, Code Crim. Pro. § 467, and if the question of jurisdiction was not raised by the demurrer, it could not have been raised by the motion in arrest of judgment. People v. Buddenseik, 103 N. Y. 487. I conclude, therefore, that the general demurrer in this case performed the same office that it always did, and raised the question of jurisdiction.

There is an appeal before us from the order overruling the demurrer. We must decide in one way or the other. If the

indictment was good and the demurrer bad, then the order should be affirmed. On the contrary, if the indictment was bad, in that it failed to allege a special fact upon which the jurisdiction of the court depended, and the demurrer was well taken, as I think it was, then the order should be reversed and the conviction would necessarily fall with the indictment.

The judgment should be reversed.

MARTIN, J.—I am of the opinion that the supreme court had no authority to inquire into this case by indictment, as it involves one of the minor crimes, the exclvsive jurisdiction of which is conferred upon a Court of Special Sessions by section 56 of the Code of Criminal Procedure, except where the certificate provided by section 57 is obtained. Code Crim. Pro. § 22. That question was sufficiently raised at the commencement of the trial by objection to the jurisdiction of the court, and by a motion in arrest of judgment. Section 331 provides that the objection to the jurisdiction of the court over the subject of an indictment, or that the facts stated do not constitute a crime, may be taken at the trial or in arrest of judgment. Code Crim. Pro. § 467. Thus, the exception to the denial of those motions sufficiently presents the question, and upon the ground that the motions were improperly denied, I think the judgment should be reversed.

I seriously doubt, however, if that question could be properly raised by demurrer. The objections that may be thus raised when they appear upon the face of the indictment are specified in section 323. None of the grounds stated in that section seems to include the objection upon which the decision in this case is based. Subdivision one states as one of the grounds of demurrer, that " the grand jury, by which it was found, had no legal authority to inquire into the crime charged, by reason of its not being within the local jurisdiction of the county." Although that subdivision declares that a demurrer may be taken upon the ground that the grand jury had no legal authority to inquire into the crime charged, yet that provision is expressly limited to a case where its want of authority to make such inquiry is by reason of the crime not being within the local juris-

diction of the county. Obviously that subdivision has no application here, as the offense was committed within the county. By the second subdivision, one of the grounds of demurrer is that the indictment does not conform substantially to the requirements of sections 275 and 276. It cannot be pretended that this indictment was insufficient in that respect. Nor can it be claimed that more than one crime was charged within the meaning of sections 278 or 279. It is equally apparent that the facts stated constitute a crime, and we find nothing in the indictment which, if true, would constitute a legal justification of the acts charged, or other legal bar to the prosecution. As these are all the questions authorized to be raised by demurrer, it seems quite obvious that the objection that the court in which the indictment was found had no jurisdiction by reason of the exclusive jurisdiction of the court of special sessions, cannot, under the provisions of the Code, be raised by demurrer.

I fully concur in the opinion and reasoning of my Brother O'Brien, so far as necessary, to the determination of this case. But I am not prepared to concur in his view that an indictment for a misdemeanor found in a court of general jurisdiction must allege that it does not fall within the provisions of section 56, or, if so, that a certificate has been procured under section 57, and that the omission of those allegations renders the indictment demurrable under the Code. Hence, I am constrained to place my vote upon the ground that the question of jurisdiction was properly raised by the defendant's motions and exceptions to their denial, and to refrain from concurring in the conclusion that the demurrer should have been allowed.

HAIGHT, J. (dissenting).—The indictment contained two counts. In the first the grand jury of the county of Monroe accuses the defendant of the crime of "unlawfully, willfully, feloniously and maliciously destroying and injuring personal property, committed as follows: The said Justus Knatt, on the 17th day of June, in the year of our Lord 1892, at the town of Webster, in this county, did, unlawfully, willfully, feloniously and maliciously destroy and poison unto death one bull and four cows, of the value, in the aggregate, of about

two hundred and twenty-five dollars, of the property of Mary J. Burnett, contrary to the form of the statute in such case made and provided, and against the peace of the people of the state of New York and their dignity."

The second count is in substantially the same language, except it charges the destruction of the personal property to be in violation of section 654 of the Penal Code.

To the indictment the defendant interposes a demurrer, upon the ground that the facts stated in the indictment constitute misdemeanors as defined by section 660 of the Penal Code, and are within the exclusive jurisdiction of a court of special sessions; that neither of said offenses has ever been removed to the grand jury by virtue of a certificate, or according to the provisions of section fifty-seven of the Code of Criminal Procedure; and that the grand jury of the court of oyer and terminer had no jurisdiction to find and present the indictment. The demurrer was overruled, and the case was called for trial in the Monroe county court of sessions. The defendant's counsel then objected to the court's proceeding with the trial, upon the ground specified in the demurrer. The objection was overruled and the trial proceeded, resulting in a conviction of the crime as charged in the indictment. A motion was then made in arrest of judgment upon the same ground, which was denied.

Our examination of the case has led us to conclude that there is but one question presented which requires consideration in this court, and that pertains to the jurisdiction of the grand jury of the court of oyer and terminer to find the indictment.

Section fifty-six of the Code of Criminal Procedure gives to courts of special sessions, subject to the power of removal, exclusive jurisdiction to hear and determine charges of misdemeanors committed within their respective counties, enumerated in the section, in which is included cruelty to animals. Section fifty-seven provides that, upon filing with the magistrate before whom is pending a charge for any of the crimes specified in the last section, a certificate of the county judge of the county, or of any justice of the supreme court, that it is

reasonable that such charge be prosecuted by indictment, all proceedings before the magistrate shall be stayed, and the district attorney shall present such charge to the grand jury.

Section 660 of the Penal Code is included in title sixteen under the head of "Cruelty to Animals," and provides as follows: "A person who unjustifiably administers any poisonous or noxious drug or substance to an animal, or unjustifiably exposes any such drug or substance with intent that the same shall be taken by an animal, whether such animal be the property of himself or another, is guilty of a misdemeanor." It must be conceded, we think, that the provisions of this section constitute a misdemeanor specifically enumerated in section fifty-six of the Code of Criminal Procedure, and is, therefore, within the exclusive jurisdiction of the court of special sessions, unless the case be removed therefrom by a certificate provided for in section fifty-seven, and, inasmuch as no such certificate was procured, it follows that the grand jury had no jurisdiction to indict the defendant under this section of the Code. But, as we have seen, the indictment was founded upon section 654 of the Penal Code. That section, so far as applicable, provides that "a person who unlawfully and willfully destroys or injures any real or personal property of another, * * * in a case where the punishment is not specially prescribed by statute, is punishable as follows:

"1. If the value of the property destroyed, or the diminution in the value of the property by the injury is more than twenty-five dollars, by imprisonment for not more than four years.

"2. In any other case, by imprisonment for not more than six months, or by a fine of not more than two hundred and fifty dollars, or by both such fine and imprisonment.

"3. And in addition to the punishment prescribed therefor, he is liable in treble damages for the injury done, to be recovered in a civil action by the owner of such property, or the public officer having charge thereof."

The defendant was convicted of having "destroyed and poisoned unto death" the cattle of Mary J. Burnett, of the value of about two hundred and twenty-five dollars. It is contended that the act for which the defendant has been convicted

was a misdemeanor as defined by section 660 of the Penal Code, and that it is not included in section 654, for the reason that that section, by its terms, has reference only to offenses not otherwise provided for. We do not so read the provision. A person who unlawfully and willfully destroys or injures the property of another, " in a case where the punishment is not specially prescribed by statute, is punishable as follows." In other words, the provisions of this section apply to all cases in which the property of another has been unlawfully and willfully destroyed or injured, except in a case where the punishment has been specially prescribed by statute. By referring to the provisions of section 660, it will be observed that the punishment in that case has not been specially prescribed. The poisoning of animals has been made a misdemeanor, but no punishment is specially prescribed therefor. Other sections in the same title specially prescribe a punishment, as, for instance, in section 662, the keeping of milch cows in unhealthy places and feeding them with food producing unwholesome milk, is punishable by a fine of not less than fifty dollars, or imprisonment not to exceed a year, or both ; and in section 664, the fighting of birds and animals is punishable by a fine of not less than ten dollars and not more than one thousand dollars, or by imprisonment for not less than ten days nor more than one year, or by both. But for poisoning animals, under section 660, no special punishment is prescribed. It is made a misdemeanor, and punishment takes place under the general provisions of the statute providing that " a person convicted of a crime declared to be a misdemeanor, for which no other punishment is specially prescribed by this Code, or by any other statutory provision in force at the time of the conviction and sentence, is punishable by imprisonment in a penitentiary, or county jail, for not more than one year, or by a fine of not more than five hundred dollars, or by both." Penal Code, section 15. It will, therefore, readily be seen that section 660 does not apply to a case where punishment is specially prescribed, and for that reason it is not brought within, or in conflict with, the provisions of section 654.

It is said that " almost every crime against property involve in some sense its destruction or injury. The crime for arson, for instance, involves nearly always the willful and unlawful destruction of the property of another; but it cannot be supposed for a moment that such an offense is included within the scope of this section." Very true; but the reason that arson is not included within the scope of this section is that the provisions of the Code constituting the crime specially prescribe the punishment, and this section, by the terms thereof, does not apply to cases where the punishment is *specially* prescribed.

It is contended that the provisions of section 654 do not refer to animals; that animals are treated in the later sections. But those sections have reference to cruelty to animals. Under the former section, the gravamen of the act is the unlawful and willful destruction of the property of another. Under section 660 the gravamen of the offense is the cruelty to animals by the unjustifiable administering to them poisonous or noxious drugs. The destruction of or injury to property is not a necessary element in the latter offense. The property need not be that of another. A person may be liable, under the provisions of the act, for cruelty to his own animals; he may be liable, even though the animal be of no value. It is the cruelty that is prohibited, not the destruction of the property. Under the former section cruelty is not an ingredient of the crime. It is an unlawful and willful destruction of or injury to the property of another. The provision is general, and we apprehend embraces all kinds of property, including animals, with a single exception, and that is, where other punishment is specially prescribed by statute.

This construction is in harmony with the other provisions of the Penal Code, and provides a punishment adequate for the crime. If one steals property from another of the value of twenty five dollars and upwards, it is punishable by imprisonment as for a felony; if less than twenty-five dollars in value, the punishment is only for a misdemeanor. So far as the owner is concerned, if his property is destroyed, he suffers the same loss as if it had been stolen from him. The two

crimes differ only in the fact that where property is stolen the person committing the crime usually does it for the sake of gain; but where he willfully destroys the property of another, it is usually done through hatred, malice and a desire for revenge. In committing cruelty to animals, the person is controlled by very different motives. Usually by some desire to punish the animal upon which the cruelty is inflicted; and this is as liable to be done upon his own animals as upon those of another. In this case the evidence very satisfactorily shows that the defendant was not actuated by any desire to punish the animals poisoned; they had done him no harm; they had not trespassed upon his premises, nor done any act to incur his displeasure or to stimulate his cruelty, but the evidence does show that he entertained very bitter feeling toward the Burnetts, and that he was seeking an opportunity to revenge himself upon them. He had procured bluing and daubed it upon their buildings; he had threatened to burn their barns and to poison their cattle, all for revenge for injuries which he claims he had suffered at their hands. · It was to injure them, rather than to torment their cattle, that he administered the poison.

I think the facts bring the offense clearly within the provisions of section 654 of the Penal Code, and that it was properly prosecuted by indictment.

O'BRIEN, J., reads for reversal. All concur with him on the merits, except HAIGHT, J., who reads dissenting opinion, with whom GRAY, J., concurs.

BARTLETT, HAIGHT and VANN, JJ., concur also with MARTIN, J., upon questions discussed by him.

Judgment reversed.