SUPREME COURT — APPELLATE DIVISION—
THIRD DEPARTMENT.

May 2, 1923.

THE PEOPLE v. VERNON JACKSON.

(205 App. Div. 202.)

(1) INDICTMENT—GRAND JURY HAS POWER TO FIND INDICTMENT AFTER ADJOURNMENT OF SUPREME COURT AND WHILE PRESIDING JUSTICE IS OUT OF COUNTY.

A grand jury properly convened has the power to find an indictment after the Supreme Court has adjourned and while the presiding justice is out of the county.

(2) SAME—OBJECTION TO INDICTMENT IS PURELY TECHNICAL AND CONVICTION OF PERJURY WILL NOT BE REVERSED.

An objection to an indictment so found is purely of a technical nature and a judgment of conviction of perjury will not be reversed on that ground, where the defendant does not claim that he has sustained any infringement of his rights by the action of the grand jury.

APPEAL by the defendant, Vernon Jackson, from a judgment of the County Court of the county of Franklin, rendered against him on the 4th day of December, 1922, convicting him of the crime of perjury, and also from orders denying, respectively, his motions to set aside the indictment, for an arrest of judgment, and for a new trial.

*Andrew B. Cooney,* for the appellant.

*Ellsworth C. Lawrence, District Attorney,* for the respondent.

HASBROUCK, J.:

This is an appeal from a verdict against the defendant for perjury rendered in the County Court of Franklin county.

It appears from appellant's brief that he was sentenced on

such verdict to imprisonment in Dannemora prison for a term of not less than three nor more than seven years.

The first question raised is that the grand jury found an indictment against him during an adjournment of the court and while the presiding justice was out of the county of Franklin.

There was a Supreme Court in the Colony of New York before the American Revolution. It was created by an act of the Colonial Assembly in 1691 and had conferred upon it the jurisdiction in civil and criminal matters exercised by the courts of Kings Bench, Common Pleas and Exchequer in England. (1 Colonial Laws of New York [Comp. Stat. Rev. Comm.], 226, 229, chap. 4, passed May 6, 1691; Matter of Steinway, 159 N. Y. 255, 256. See Hanna v. Mitchell, 202 App. Div. 507, 508.)

The Supreme Court as constituted by this act was continued by colonial legislation until the adoption of the Constitution of the State of New York at Kingston, April 20, 1777.

The Constitution recognized the existence of the court, provided for the appointment of the judges, their commissions, and barred them from holding any other office except that of Delegate to the General Congress. (Const. of 1777, arts. 3, 23, 24, 25, 27, 32.)

After providing that such parts of the common law of England and of the statute law of England and Great Britain and of the acts of the Legislature of the Colony of New York as together formed the law of the Colony on April 19, 1775, should be and continue the law of the State, except as modified by the Legislature (Const. of 1777, art. 35), and that the trial by jury should remain inviolate forever (Const. of 1777, art. 41), with some exceptions it left the great body of the law as it found it. The court is the one great court of original jurisdiction in the State, and since the State's organization has had its jurisdiction broadened by the imposition of chancery or equity powers and its function increased by the imposition of

the criminal offices of the Courts of Oyer and Terminer. Could there be any doubt that in the absence of legislation regulating the dates of its sitting the court had power to fix them? The statutory law now places such duty primarily upon the Appellate Division in the several judicial departments of the State. (See Judiciary Law, §§ 84, 86, 96, 141, 150 et seq.; Id., § 148, as amd. by Laws of 1921, chap. 123.)

The Supreme Court is expressly authorized to adjourn any term from day to day or to a specified future day by an entry in the minutes. (Judiciary Law, § 7.)

No distinction is made in the law between a term of the Supreme Court held for civil and one held for the transaction of criminal business. An adjournment of one kind of business cannot affect the status of any other business properly pending before the court. The business about which the grand jury is concerned does not become " pending before the court " until it is presented to the court.

The appellant claims that because the Supreme Court took a recess the grand jury took a recess and during the time of the court's recess could find no indictment.

The grand jury is a part of the court, it is true—an adjunct— but almost its sole function is to determine and to make presentments of or find indictments for crime. The Code of Criminal Procedure (§ 223 et seq.) provides the manner of summoning such juries and prescribes regulations for the conduct of business.

There is no specific provision relating to the power of the grand jury to take a recess. But the immemorial practice has been for it to exercise such power and in its action in that respect it is quite independent of the court. When its work is finished the court is required to discharge it from its duties. If the court fails so to do and the court adjourns sine die the grand jury stands discharged. (Code Crim. Proc., § 251.) The very purpose of the grand jury originally was to constitute a barrier between the oppression of power in imperial England

and popular liberty. It follows that it was especially intended that its conduct was beyond the power of the court to sway it in the discharge of its duties, much less should it be held necessary to prescribe its hours and meetings. The timing of its sittings then did not depend upon the presence of a judge in the court but upon the session of the court in the county.

The judge, like the grand jury itself, is but a part of the court. The Supreme Court's function is as wide as the State; that of the grand jury, generally speaking, as wide as the county. When a term of the Supreme Court has been commenced in a county its continuance does not depend upon the presence of a particular judge; another may function. The clerk of the court in the absence of the judge may adjourn the court at its commencement and from time to time during its session; and until the court is adjourned it continues. It has been held to continue without adjournment where the act of God had interfered. (People v. Sullivan, 115 N. Y. 185. See, also, Judiciary Law, § 6, as amd. by Laws of 1921, chap. 123: Id., § 7 et seq.)

It would be a great waste of the time of the justices of the Supreme Court if when the business before a trial court has all been finished, except that of receiving the report of the grand jury, to require them to remain in the county of its sitting until its labors were completed. There is no such jurisdictional incompetence in the Supreme Court. The duty of the judge to hold Special Terms during his Trial Terms requires such conduct and the law directly imposes upon him when he is not holding court, i.e., in court, to " transact such judicial business as may be done out of court." (Civ. Prac. Act, § 65.)

It follows from the practice of the courts, immemorial usage, the statutory law, the necessity that the services of the justices should be in use, the great power of the court as it has developed through two centuries and a quarter, and the nature of a grand jury and its independence and particular function, that it may sit during the term of the court quite independently of the pres-

ence of a justice upon the bench or in the county while such grand jury is performing its work.

As long as the court once opened continues in the county and until it has been adjourned sine die the grand jury may lawfully perform its work at any time of its choosing which is not expressly interdicted by statute. (Commonwealth v. Bannon, 97 Mass. 214; People ex rel. Pickard v. Sheriff, 11 Civ. Proc. Rep. 172.)

Moreover, it is not claimed upon the part of the appellant that he has sustained any infringement of his rights by the fact that an indictment was found against him in the absence of the justice. The objection is purely of a technical nature. It is made to the conduct of the grand jury which brought no harm to him. Under such circumstances the courts will refuse to sustain such an objection and make it the basis of reversing a judgment of conviction. (People v. Duffy, 212 N. Y. 63.)

No question is raised by the appellant as to the fact that he committed perjury. The record discloses an utter disregard on the part of the defendant of the oath he had taken to tell the truth. The sentence of the court is lenient rather than excessive, taking into consideration the extent of the perjury committed. We do not think the exception to the striking out of the evidence brings up for review an error of any consequence. (See Code Crim. Proc., § 542.) The testimony stricken out though part of a conversation called for on the direct examination of the witness, Smallman, is not of such character as would have had any influence on the jury in finding a verdict in the case against the defendant.

The judgment of conviction should be affirmed.

Present—H. T. KELLOGG, Acting P. J., KILEY, VAN KIRK, HINMAN and HASBROUCK, JJ.

Judgment of conviction unanimously affirmed.