In the Matter of the Application of CHARLES DEFAZIO for a Prohibition Order against THE ONEIDA COUNTY COURT and Hon. FREDERICK H. HAZARD, Oneida County Judge. (And Four Other Cases.)

Supreme Court, Oneida County, February 25, 1931.

*Walter D. Rabenstein, J. Ezra Hanagan* and *Isaac I. Marks* [*D. Francis Searle* of counsel], for the petitioners.

*Charles L. DeAngelis, District Attorney* [*John J. McGinty* of counsel], for the respondent.

CHENEY, J. There are five of these applications, but as the questions in all of them are the same, they will be considered in one memorandum. In each of these cases an alternative prohibition order was granted by the Supreme Court directing the Oneida county judge and Frederick H. Hazard, Oneida county judge, to desist and refrain from any proceedings in, upon or in respect to the trial of the petitioners respectively on the indictments referred to in the respective petitions until the further direction of the Supreme Court, and to show cause why said County Court and judge should not be absolutely restrained from any further proceeding in those actions or matters. These orders were made returnable at the above-mentioned term of this court, and at that time the respondents made returns in each case respectively as therein required. No traverse of the returns was made, and the court took whatever evidence either party desired, and it appearing that no disputed questions of fact were involved, the court proceeded to dispose of the matters, after hearing the arguments of counsel upon the questions of law arising from the conceded facts.

It appears without dispute that the various petitioners were indicted by the grand jury of the county of Oneida, four of them of the crime of violating the provisions of the Election Law at a primary election, a misdemeanor, committed in the city of Utica September 16, 1930, and the fifth, Lesandrelli, of the crime of perjury for alleged false swearing before said grand jury during the investigation of the other offenses, the violation of the Election Law. These several indictments were by order remitted to the County Court of Oneida county for trial. The said petitioners each respectively demurred to the indictment against him and moved to dismiss the same upon the same grounds which are urged here as the basis for the prohibition order. The demurrers were overruled and the motions to dismiss were denied, and the County Court was moving to put the petitioners upon trial upon the several

indictments when restrained by the alternative prohibition orders before mentioned.

The petitioners attack the jurisdiction of the court to try them upon said indictments, and the validity of said indictments as a basis for criminal proceedings against them, upon two grounds, the first being that exclusive jurisdiction of all crimes of the grade of misdemeanor committed in the city of Utica was by law vested in the City Court of Utica, and that for that reason the grand jury was without power to present indictments for the crime alleged, and the second, that the term of the Supreme Court in Oneida county in connection with which the grand jury which found the indictments was sitting had terminated before the consideration of the charges against the petitioners, and that the consideration by the grand jury and the finding and prosecution of the indictments was a nullity for that reason.

The facts on which the second objection to these indictments is based are as follows: The Appellate Division of the Supreme Court, Fourth Department, regularly designated a Trial Term of the Supreme Court to be held at the court house in the city of Utica, to be presided over by Mr. Justice EDWARD N. SMITH, with a grand jury, to commence on the 6th day of October, 1930. On said day said Trial Term was duly opened at said place, with Justice SMITH presiding, and the persons regularly drawn to serve as grand jurors at said term were duly sworn as such, the jury was duly organized and charged by the presiding judge and set to work to perform the functions for which they were impaneled. On the 31st day of October, 1930, when the court had disposed of the other business before it, the presiding judge was informed that the grand jury had not finished its investigation and was not then ready to report, and he thereupon adjourned the court until November fifth to enable the grand jury to continue its work, and said court was thereafter under the direction of said justice regularly opened at ten o'clock each morning and adjourned at five o'clock in the afternoon of each day, excepting Saturdays and Sundays, until the next business day at ten o'clock A. M., until the 18th day of November, 1930. Mr. Justice SMITH, who was appointed as the presiding justice of the October term, was not physically present in Utica from October thirty-first until November eighteenth, and during that time was actually presiding at a term of court in Syracuse, an hour's ride away. There was another regularly appointed Trial Term of the Supreme Court, presided over by Mr. Justice LEWIS, without a grand jury, in session in Oneida county during each court business day from November fifth until and after the time when the grand jury reported. The grand jury

continued its labors each court business day from November fifth until November eighteenth, on which day it appeared in said court, Mr. Justice SMITH being present and presiding therein, and presented its report and the indictments found by it, including the indictments against the petitioners herein, and the same were by order remitted to the County Court for trial, and the said term of court was thereupon adjourned without day.

There is no question but that there is vested in the Supreme Court power to prevent by a prohibition order inferior courts from proceeding when they have no jurisdiction or from exceeding their powers when they have jurisdiction. It is equally well settled that the issuance of such an order is not a matter of right, but rests in sound judicial discretion, and is justified only by extreme necessity when the grievance cannot be redressed by ordinary proceedings at law or in equity or by appeal. (*People ex rel. Hummel* v. *Trial Term*, 184 N. Y. 30; *People ex rel. Livingston* v. *Wyatt*, 186 id. 383; *People ex rel. Cuvillier* v. *Hagarty*, 209 App. Div. 832.) It was said by the Court of Appeals in *People ex rel. Livingston* v. *Wyatt* (*supra*, 393): " The writ of prohibition is not favored by the courts. Necessity alone justifies it. Although authorized by statute, it is not issued as a matter of right, but only in the exercise of sound judicial discretion when there is no other remedy. While it issues out of a superior court and runs to an inferior court or judge, its object is not the correction of errors nor relief from action already taken. In no sense is it a substitute for an appeal, as its sole province is to prevent the inferior tribunal from usurping a jurisdiction which it does not possess, although it runs against the exercise of unauthorized power in a proceeding of which the lower court has jurisdiction, as well as when the proceeding itself is instituted without jurisdiction. The sole question to be tried is the power of the inferior court or magistrate to do the particular act in question. It is in effect an injunction against a court as contrasted with an injunction proper, which is granted against persons or corporations. It is not an affirmative remedy like mandamus, but purely negative, for it does not command that anything be done, but that something should be left undone. The practice in issuing and enforcing the writ is regulated by statute, but its nature, object and function  *  *  *  are regulated by the common law.  *  *  *  It is justified only by ' extreme necessity,' when the grievance cannot ' be redressed by ordinary proceedings at law, or in equity, or by appeal.' "

There can be no question but that the grievance complained of by the petitioners here can be redressed by the ordinary proceedings of the criminal law and by the appeal provided for therein. The

petitioners have already raised by demurrers and motions to dismiss the indictments all the questions which they now urge in support of this application. At least one of these proceedings was the proper method of raising those questions. (*People* v. *Knatt*, 156 N. Y. 302; *People* v. *Vert*, 134 App. Div. 790.) It is probably true that in the first instance no appeal will lie from the orders overruling the demurrer and denying the motion to dismiss. But it cannot be denied that if the petitioners should be convicted upon a trial of the indictments, an appeal does lie therefrom and that upon such appeal such orders can be brought up for review and the questions raised thereby be determined. (Code Crim. Proc. § 517; *People* v *Canepi*, 181 N. Y. 398.)

The petitioners here urge that " It is far better to prevent the exercise of an unauthorized power than to be driven to the necessity of correcting the error after it is committed." (*Quimbo Appo* v. *People*, 20 N. Y. 531, 542.) Sound judicial discretion would probably require that such course be followed if it should clearly and undoubtedly appear that the inferior court was about to usurp a jurisdiction which it did not possess or to exceed its powers when it had jurisdiction. The determination of that question makes necessary an examination upon the merits of the objections to the jurisdiction of the court to try the petitioners upon these indictments.

The first of these grounds, as to the four petitioners who were indicted for misdemeanor, is that the grand jury was without power to present indictments for such crimes for the reason that the exclusive jurisdiction in the prosecution of all crimes of the grade of misdemeanor committed in the city of Utica was by law vested in the City Court of Utica. In the perjury case the same question is raised by the claim that if the grand jury was without power to indict for the offense, it was also without power to investigate the offense, and, therefore, any testimony given at such investigation, even though false, is not perjury. The court is disposed to accept that claim for the sake of the argument without investigation.

The Code of Criminal Procedure, section 22, provides that the Supreme Court has jurisdiction to inquire, by the intervention of a grand jury, of all crimes committed or triable in the county; but in respect of such minor crimes as Courts of Special Sessions or Police Courts have exclusive jurisdiction to hear and determine, in the first instance, the jurisdiction of the Supreme Court attaches only after the certificate mentioned in section 57 of that Code, and to try and determine all such crimes, and to try all persons indicted for the same; and the grand jury has power, and it is their duty, to inquire into all crimes committed or triable in the county,

and to present them to the court. (Code Crim. Proc. § 252.) It is settled by the authorities, notwithstanding the broad provisions of section 252, *supra*, that a grand jury in the first instance is without jurisdiction to indict for the minor offenses enumerated in section 56 of the Code of Criminal Procedure as within the exclusive jurisdiction of Courts of Special Sessions, although it may if the certificate provided for by section 57 is previously obtained. (*People* v. *Knatt*, 156 N. Y. 302; *People* v. *Vert*, 134 App. Div. 790; *People* v. *Roberts*, 91 Misc. 229; *People* v. *Gardner*, 78 id. 514.)

The offenses for which these indictments were found are made misdemeanors by Penal Law, section 751, subdivision 3, and are not enumerated in sections 56 or 56-a of the Code of Criminal Procedure, so those sections do not oust the grand jury of jurisdiction. Neither is the City Court of Utica included among " courts of special sessions or police courts," as mentioned in the Code of Criminal Procedure, section 22. That court is enumerated in section 11 of the Code of Criminal Procedure as one of the courts of justice in this State having original jurisdiction in criminal matters, but the extent of its jurisdiction is not otherwise defined by that Code as is the case of the other courts contained in that enumeration. It is an inferior local court of both civil and criminal jurisdiction, and its jurisdiction is fixed by statute. Although this is an old court, and on the criminal side is the successor of the old Recorder's Court of Utica, its criminal jurisdiction is now fixed by the so-called City Court Act (Laws of 1926, chap. 588). The portion of said act applicable here is contained in section 4, and reads as follows: " While sitting as a court of special sessions, said city court shall in the first instance *except as hereinafter provided* have exclusive jurisdiction [to try and determine all complaints for misdemeanors committed in said city of Utica, where the term of imprisonment does not exceed one year, with or without fine, not exceeding five hundred dollars, excepting conspiracies and to impose the same punishment as is authorized by statute in like cases to be inflicted by the court of sessions of the county of Oneida. The defendant, charged with a misdemeanor committed within the corporate limits of the city of Utica, shall not have the right to give bail to await the action of any grand jury but said city court shall have power in its discretion to admit any defendant charged with a misdemeanor to bail to await the action of any grand jury, to take bail for the appearance of the defendant for trial in the forms prescribed by the code of criminal procedure in all criminal actions triable therein. *This section shall not be construed to abridge the powers of any grand jury in the county of Oneida to*

*find any indictment for a misdemeanor committed in said city of Utica,* or to abridge the powers of the court of oyer and terminer, or court of sessions, in and for said county, to try any such indictment." (Italics mine.)

The claim that exclusive jurisdiction over prosecutions for misdemeanors committed in the city of Utica is vested in the City Court must rest upon this section of the City Court Act, and it is unfortunate that the intent of the Legislature is not more clearly expressed. It is very evident that this section is very carelessly drawn, for when it was enacted there was not any " Court of Sessions " or " Court of Oyer and Terminer," as both those courts were abolished as of December 31, 1895 (Const. of 1895, art. VI, §§ 6, 14). If read strictly, the court would have no authority to punish for a misdemeanor, as its only authority was " to impose the same punishment as is authorized by statute in like cases to be inflicted by the *court of sessions."* (Italics mine.) Because by those sections of the Constitution the jurisdiction of the existing Court of Sessions was conferred on the County Courts, and of the Court of Oyer and Terminer upon the Supreme Court and all pending business transferred to those courts (*People* v. *Hoch,* 150 N. Y. 291), perhaps we can say that it was the intent of the Legislature to have named the County Court wherever the Court of Sessions appears in the act and the Supreme Court for the Court of Oyer and Terminer and thereby put some meaning and vitality into the act. This is borne out by the history of this section.

The City Court of Utica was created by the Legislature by chapter 103 of the Laws of 1882, taking effect June 1, 1882. By section 4 of that act it was given " the same powers and jurisdiction now possessed by courts of justices of the peace within the city of Utica, including bastardy cases, and by the recorder's court of Utica, and in addition thereto shall have exclusive jurisdiction of all misdemeanors committed within the corporate limits of the city of Utica." If the section had been left in that form there might have been some basis for the contention of exclusive jurisdiction over misdemeanors which is made here. But on June 15, 1882, fifteen days after this act took effect, the Legislature passed an amendment to the section (Laws of 1882, chap. 352) which omitted the language conferring exclusive jurisdiction over misdemeanors committed in the city of Utica, and to make certain that it was not the legislative intent to confer such exclusive jurisdiction, there was inserted the clause: " This section shall not be construed to abridge the powers of any grand jury in the county of Oneida to find any indictment for a misdemeanor committed in said city of Utica,

or to abridge the powers of the court of oyer and terminer, or court of sessions, in and for said county, to try any such indictment."

The section remained in this condition until 1889, when by chapter 154 it was again amended so as to read precisely as it does now, with the exception of the words " courts of justices of the peace of the several towns of the county of Oneida," which do not appear therein. It is significant that that portion relating to exclusive jurisdiction of misdemeanors is limited by the words, " Except as hereinafter provided," and confers exclusive jurisdiction " to try and determine *all complaints* for misdemeanors " only while sitting as a Court of Special Sessions, and there is re-enacted the provision that the section " shall not be construed to abridge the powers of any grand jury in the county of Oneida to find any indictment for a misdemeanor committed in said city of Utica, or to abridge the powers of the court of oyer and terminer, or court of sessions, in and for said county, to try any such indictment." This court is an independent court, is not and never was a " Court of Special Sessions," and does not sit and cannot sit as a Court of Special Sessions.

While many amendments to the City Court Act were made from time to time after 1889, none were made affecting its jurisdiction, until chapter 586 of the Laws of 1925, when the act was radically revised and enlarged, but the section relating to jurisdiction was re-enacted in precisely the same form as the act of 1889; and by chapter 588 of the Laws of 1926 the words, " Courts of justices of the peace of the several towns of the county of Oneida," were added, which addition does not affect the question here, as justices of the peace as such do not have criminal jurisdiction, although Courts of Special Sessions are presided over generally by justices of the peace. The Legislature overlooked the fact that the Constitution of 1895 had abolished Courts of Oyer and Terminer and Courts of Sessions, and the references to those courts were re-enacted into the amended law. The same situation was presented when the present law (Laws of 1926, chap. 588) was enacted, and the same error was continued.

It is clear that no absolute exclusive jurisdiction in prosecutions for misdemeanors committed in the city of Utica is conferred upon the City Court, but only an exclusive jurisdiction subject to certain reservations or exceptions contained in the statute. One of those reservations has reference to the power of any grand jury of the county of Oneida to present an indictment for such offense, and if such indictment is found, then the City Court no longer has exclusive jurisdiction of the prosecution. That such is the proper construction to be put upon this section is borne out by the decision

of cases construing a much similar statute relating to the Court of Special Sessions of the city of New York. (*People* v. *McCarthy,* 168 N. Y. 549; *People* v. *Wenk,* 71 Misc. 368.)

The second objection to the validity of the indictments which form the basis for the prosecutions which it is sought to prohibit here is the claim that the term of the Supreme Court, in connection with which the grand jury presenting the indictments was sitting, had terminated before the consideration of the charges against the petitioners, and that, therefore, all proceedings before such grand jury and the indictments presented by it were null and void. This contention must stand or fall upon the fact that Mr. Justice SMITH, who was presiding at that term, did not remain in Utica, where the court was held, after he had concluded the other business before the court, during all the time that the grand jury was engaged in its investigation, but was elsewhere in the judicial district and busy in the performance of other duties of his office, for it appears without dispute that said court was regularly opened each day and kept open while such grand jury was in session and adjourned from day to day, under the direction of Judge SMITH by an entry in its minutes, and that when the grand jury was ready to report Judge SMITH was presiding in the court, and the report of the grand jury and the indictments found by it were presented by the foreman in open court as required by section 272 of the Code of Criminal Procedure. When a term of court has been legally commenced, it may continue so long as its business, both civil and criminal, is unfinished, and to accomplish that purpose it may be adjourned from day to day by an entry in the minutes. (Judiciary Law, § 7; *People* v. *Sullivan,* 115 N. Y. 185.)

The physical presence of the judge on the bench is not essential to the proper functioning of a grand jury. The theory of a grand jury investigation is that it should be made independently and uninfluenced by the court. It is required by law to retire to a private room. (Code Crim. Proc. § 249.) Primarily the district attorney is made its legal adviser and the law carefully prescribes who may be present at its sessions, and the judge is not one of them. (Code Crim. Proc. §§ 263, 264.) If any one else is permitted to be present an indictment must be set aside. (Code Crim. Proc. § 313.) The precise situation presented here has been passed on by the court in *People* v. *Jackson* (205 App. Div. 202), and an indictment found under such circumstances was sustained. The court said in that case: " The timing of its sittings then did not depend upon the presence of a judge in the court but upon the session of the court in the county.

" The judge like the grand jury itself is but a part of the court.

The Supreme Court's function is as wide as the State; that of the grand jury, generally speaking, as wide as the county. When a term of the Supreme Court has been commenced in a county its continuance does not depend upon the presence of a particular judge; another may function. The clerk of the court in the absence of the judge may adjourn the court at its commencement and from time to time during its session; and until the court is adjourned it continues. It has been held to continue without an adjournment, where the act of God had interfered.   *   *   *

"It would be a great waste of the time of the justices of the Supreme Court if when the business before a trial court has all been finished, except that of receiving the report of the grand jury, to require them to remain in the county of its sitting until its labors were completed. There is no such jurisdictional incompetence in the Supreme Court. The duty of the judge to hold Special Terms during his Trial Terms requires such conduct and the law directly imposes upon him when he is not holding court, i. e., in court, to, 'transact such judicial business as may be done out of court.'   *   *   *.

"It follows from the practice of the courts, immemorial usage, the statutory law, the necessity that the services of the justices should be in use, the great power of the court as it has developed through two centuries and a quarter, and the nature of a grand jury and its independence and particular function, that it may sit during the term of the court quite independently of the presence of a justice upon the bench or in the county while such grand jury is performing its work.

"As long as the court once opened continues in the county and until it has been adjourned *sine die* the grand jury may lawfully perform its work at any time of its choosing which is not expressly interdicted by statute."

It is claimed that the case of *Matter of Reynolds* v. *Cropsey* (241 N. Y. 389) is an authority to the contrary. I do not so read it. In that case the term of court, which was an extraordinary one, was not adjourned from day to day, or to a specified future day, by an entry in the minutes, but the presiding judge directed the term to be continued until he ordered otherwise. About a year afterward, the judge attempted to reconvene the court for the purpose of retrying a defendant whose conviction had been reversed in the meantime. The court held that "When, therefore, this extraordinary term was 'continued' without day; that is, indefinitely, it was 'adjourned' without day and thus came to an end." The court, however, stated in the opinion: "The justice may

keep the term alive by adjourning from day to day or to a specified future day by an entry in the minutes."

In the case of *People ex rel. Gracy* v. *Stronson* (127 Misc. 199; affd., 217 App. Div. 750) the court, after charging the grand jury, " adjourned until further order of the court." The grand jury continued its work about three weeks and found several indictments, and the court reconvened and the grand jury reported them. The court held that as the business of the court was not concluded until the grand jury had finished its labors, the court was still in session notwithstanding the indefinite adjournment and the indictments were properly presented.

It thus appears that there is no merit in either of the objections taken to the jurisdiction of the court to proceed in this matter. In any event no error is suggested which cannot be corrected on appeal, and no unusual circumstances exist which call for intervention by the extraordinary remedy of prohibition. (*People ex rel. Childs* v. *Extraordinary Trial Term*, 228 N. Y. 463.)

The applications for final order of prohibition are denied, and the alternative orders of prohibition heretofore granted are quashed, with costs.